
```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

ANNIE FARMER,

               Plaintiff,

          v.                              19 CV 10475 (LGS)

DARREN K. INDYKE, ET AL.,

               Defendants.

------------------------------x
                                          New York, N.Y.
                                          March 5, 2020
                                          11:20 a.m.

Before:

               HON. LORNA G. SCHOFIELD,

                                          District Judge

                         APPEARANCES

BOIES SCHILLER FLEXNER LLP
     Attorneys for Plaintiff Farmer
BY:  SIGRID S. MCCAWLEY
     SABINA NARIELLA


TROUTMAN SANDERS LLP (NYC)
     Attorneys for Defendants Indyke/Kahn
BY:  BENNET J. MOSKOWITZ
```

1              (Case called)

2              MS. MCCAWLEY:  Good morning, your Honor.

3              Sigrid McCawley.  I am here on behalf of the

4    plaintiff, Annie Farmer.  I am with the law firm of Boies

5    Schiller Flexner.  I have here with me my colleague, Sabina

6    Nariella.

7              THE COURT:  OK.  Good morning.

8              MS. NARIELLA:  Good morning.

9              MR. MOSKOWITZ:  Good morning, your Honor.

10             Bennett Moskowitz, from Troutman Sanders.  I represent

11   Darren K. Indyke and Richard D. Kahn, and both sectors of the

12   estate of Jeffrey Epstein.

13             THE COURT:  Good morning.  You may be seated.

14             I understand that Ghislaine Maxwell appeared yesterday

15   through counsel but that was yesterday and so, she is not

16   represented here, but I'd like to proceed with the conference

17   in any event.

18             So, we're here for a premotion conference on a motion

19   to dismiss.  Just as a little background, I referred the case

20   for pretrial supervision to Judge Freeman.  There are many

21   other cases involving Mr. Epstein's estate that are also before

22   Judge Freeman but the dispositive motions have not been

23   referred and I understand that defendants would like to bring a

24   motion to dismiss.  As I understand it, the principle argument

25   is the statute of limitations argument.

1       I guess what I'm trying to figure out is what is to be
2  gained by filing it now?  The reason I say that is because even
3  if the claims are untimely -- and I don't know if they are --
4  the doctrines of equitable estoppel and equitable tolling
5  could, nevertheless, save the claims and make them timely and
6  that is very fact specific, or early in the case I presumed
7  there will be factual issues around those questions and so, why
8  get into a motion to dismiss now?
9       MR. MOSKOWITZ:  Thank you, your Honor.
10      so, of course, anticipating the argument which you
11 just referenced and was one of many made in response to our
12 premotion letter that, well, hold on.  We're alleging that
13 there are equitable estoppel and therefore, you have to at
14 least have discovery.  Well, I've researched the issue and it's
15 not always the case and it's not the case here.  There are
16 plenty of cases which I've briefed before other judges who are
17 handling some of these other cases, including one of Boies
18 Schiller's cases, a plain decision where the Court said, no,
19 I've read the complaint.
20      The case law is very clear here.  These are not mild
21 doctrines.  They require very compelling, exceptional
22 circumstances.  Here, they are not even alleged.  And,
23 actually, here as opposed to some of the others where I have to
24 stop there and say they didn't allege that, I want to say the
25 opposite.  They allege that -- and I know as a matter of

1    judicial notice, the article they're talking about is a 2003

2    Vanity Fair article.  They allege that back in 2003 the

3    plaintiff went and told her story to Vanity Fair.  Well, if she

4    had the wherewith all to do that, I don't see how she could

5    plausible claim now that she wasn't aware of her rights.  She

6    was sleeping on them, et cetera.  It's certainly nothing that

7    would toll them for the nearly two decades now that we're here

8    dealing with.  So, I do think this is a different kind of case,

9    not the garden variety, oh, we have to see what happened here,

10   equitable estoppel.  So, that's, one thing.

11             I am also very concerned about the scope of discovery

12   as opposed to other counsel have taken a different track in

13   these cases.  I understand Boies Schiller has a somewhat

14   different view that there could be, what I view is rather

15   extensive discovery, and I'd like to take the opportunity --

16             THE COURT:  Let's not get into discovery just yet, if

17   you don't mind.

18             MR. MOSKOWITZ:  Sure.

19             THE COURT:  Let me hear from the plaintiff on the

20   equitable estoppel issue.

21             MS. MCCAWLEY:  Thank you, your Honor.

22             Yes, if there were ever a case for equitable estoppel,

23   it is this case.  As you've probably learned from looking at

24   the complaint, Jeffrey Epstein was a monster who perpetrated

25   crimes for over 20 years against young females.  Those crimes,

1     as we've alleged in the complaint, included death threats,
2     intimidation, harassment, all of which go toward our claim that
3     they should be equitably estopped from asserting the statute of
4     limitations defenses.
5             The Carelock case which we cite in our letter goes
6     directly to this issue.  It is this circumstance where
7     equitable estoppel is most appropriate.  And you are correct
8     that discovery will bear on these issues, and at that later
9     point --
10            THE COURT:  -- specifically, what you will uncover in
11    discovery or what the defendant will uncover in discovery that
12    will inform the motion?
13            MS. MCCAWLEY:  Well, as you may not know because I
14    know you are new to this case, but in the past when Jeffrey
15    Epstein was alive he asserted his Fifth Amendment privilege.
16    So, in any of those cases that have proceeded there was not
17    discovery directly from the defendant.  He can no longer avail
18    himself of that privilege.  So, we are now going to be
19    embarking and finally getting the documents that would show his
20    internal communications, whether they be with Maxwell, the
21    other defendant, their collaborative scheme to intimidate and
22    harass not only Annie Farmer but her sister, Maria Farmer, as
23    well with these death threats back from 1995 on.  So, this was
24    an ongoing scheme to keep them quiet to make sure that they
25    didn't talk, to make sure that they didn't bring claims, et

1   cetera.  So, it's only now that these claims are timely, now
2   that these women feel comfortable enough to be able to come
3   forward to the Court.  He's gone.  He can't hurt them at this
4   point and that's why we're here now.
5           THE COURT:  OK.  So, what I'm going to do is I am
6   going to ask you to hold off on the motion to dismiss.  I can't
7   tell you not to file it but I would suggest that you hold off.
8   If you do file it, I'm not going to decide it any time soon.  I
9   don't think it would be useful for you to file it in that case.
10  So, I'd ask you just wait.
11          The one thing that I would like to discuss briefly is
12  the issue of punitive damages.  The defendant says that, first
13  of all, it is quite early in the case to be talking about
14  punitive damages.  But the defendant says that as a matter of
15  law, neither New Mexico, nor New York permits punitive damages
16  against a tort feasor's estate.  What I'd like the plaintiffs
17  to do is just to take a look at the law.  And if it seems as
18  though that is quite clear, then just amend your complaint so
19  that or even just write a letter at this point.  You don't have
20  to formally amend it because I don't want to revive the whole
21  answer/motion process again.  But just write a letter and file
22  it saying what your position is with respect to punitive
23  damages.  And if you could do that within two weeks, that would
24  be great.
25          MS. MCCAWLEY:  Of course, your Honor.

1              Thank you.
2              THE COURT:  And with respect to the discovery, that's
3    really all Judge Freeman's bailiwick.  So, I'm not going to
4    address that.
5              Is there anything else that is appropriate to address
6    before me?  No.
7              OK.  Thank you.  We are adjourned.
8              (Adjourned)