**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------X

ANNIE FARMER,

      Plaintiff,

v.

DARREN K. INDYKE and RICHARD D.
KAHN, in their capacities as the executors
of the ESTATE OF JEFFREY EDWARD
EPSTEIN, and GHISLAINE MAXWELL,

      Defendants.

---------------------------------------------------X

**19-cv-10475-LGS-DCF**

**<u>CORRECTED MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
GHISLAINE MAXWELL'S MOTION TO DISMISS OR TO TRANSFER</u>**

## Table of Contents

Table of Contents .................................................................................................................. ii

Table of Authorities ............................................................................................................. iii

Introduction ........................................................................................................................... 1

Background ............................................................................................................................. 1

Argument ................................................................................................................................ 3

I.    The complaint, filed nearly three decades after the events it alleges, is barred by the statute
      of limitations. ................................................................................................................... 3

      A.  Standard of review. ................................................................................................... 4

      B.  The complaint is untimely under New Mexico and New York law. .............................. 4

      C.  Plaintiff's claims cannot be revived under New York law. ........................................... 6

            i.    CPLR § 215(8)(a) does not revive Plaintiff's untimely claims. ............................ 6

            ii.   CPLR § 214-g does not and cannot revive Plaintiff's claims. ............................. 6

            iii.  Plaintiff has not plausibly plead equitable tolling or estoppel. ............................ 18

II.   If not dismissed, the case against Ms. Maxwell should be transferred to the District of New
      Mexico. .......................................................................................................................... 20

Conclusion ............................................................................................................................ 21

Certificate of Service ........................................................................................................... 22

## Table of Authorities

**Cases**

*Am. Transit Ins. Co. v. Sartor*, 814 N.E.2d 1189 (N.Y. 2004) ...................................................... 7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................ 4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................................ 4

*Dennis v. JPMorgan Chase & Co.*, __ F. Supp. 3d __, No. 16-CV-6496 (LAK), 2020 WL
729789 (S.D.N.Y. Feb. 13, 2020) ........................................................................................ 4, 17

*Doe v. Hartford Roman Catholic Diocese Corp.*, 119 A.3d 462 (Conn. 2015) ......................... 13

*Ferro v. Ry. Express Agency, Inc.*, 296 F.2d 847 (2d Cir. 1961) ................................................. 19

*Friedman v. Connecticut Gen. Life Ins. Co.*, 877 N.E.2d 281 (N.Y. 2007) ................................ 10

*Gallewski v. Hentz & Co.*, 93 N.E.2d 620 (N.Y. 1950) .................................................... 13, 14, 16

*Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156 (S.D.N.Y. 2019)............. 5, 11, 18, 19

*Guaranty Trust Co. v. York*, 326 U.S. 99 (1945) .......................................................................... 5

*Hopkins v. Lincoln Trust Co.*, 135 N.E. 267 (N.Y. 1922) ........................................................... 12

*Hymowitz v. Eli Lilly & Co.*, 539 N.E.2d 1069 (N.Y. 1989) ............................................. 13, 14, 16

*In re London Silver Fixing, Ltd., Antitrust Litig.*, 332 F. Supp. 3d 885 (S.D.N.Y. 2018) ............. 4

*In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 66 F. Supp. 3d 466 (S.D.N.Y.
2014) ........................................................................................................................................ 15

*In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 89 N.E.3d 1227 (N.Y. 2017) .... 12,
16, 17

*Jang Hoi Choi v. Beautri Realty Corp.*, 22 N.Y.S.3d 431 (N.Y. App. 1st Dept. 2016) .............. 18

*Knickerbocker Ice Co. v. Stewart*, 253 U.S. 149 (1920).............................................................. 13

*Lubonty v. U.S. Bank Nat'l Ass'n*, 139 N.E.3d 1222 (N.Y. 2019) ............................................... 11

*Majewski v. Broadalbin-Perth Cent. Sch. Dist.*, 696 N.E.2d 978 (N.Y. 1998) ............................ 7

*Matter of McCann v. Walsh Constr. Co.*, 123 N.Y.S.2d 509 (N.Y. App. 3rd Dept. 1953) ... 13, 14, 16

*Ochre LLC v. Rockwell Architecture Planning & Design, P.C.*, No. 12 CIV. 2837 KBF, 2012 WL 6082387 (S.D.N.Y. Dec. 3, 2012) .................................................................................. 19

*People v. McLaughlin*, 606 N.E.2d 1357 (N.Y. 1992) ........................................................ 7

*Robinson v. Robins Dry Dock & Repair Co.*, 144 N.E. 579 (N.Y. 1924) ............................ 13, 16

*Simmons v. Abruzzo*, 49 F.3d 83 (2d Cir. 1995) .................................................................. 19

*Slusser v. Vantage Builders, Inc.*, 306 P.3d 524 (N.M. App. 2013) .................................... 20

*Stafford v. International Harvester Co.*, 668 F.2d 142 (2d Cir. 1981) .................................. 5

*Stuart v. Am. Cyanamid Co.*, 158 F.3d 622 (2d Cir. 1998) .................................................. 5, 11

*Sweener v. Saint-Gobain Performance Plastics Corp.*, No. 1:17-CV-0532, 2019 WL 748742 (N.D.N.Y. Feb. 7, 2018) ......................................................................................................... 14

*Touche Ross & Co. v. Redington*, 442 U.S. 560 (1979) ...................................................... 9

*Zumpano v. Quinn*, 849 N.E.2d 926 (N.Y. 2006) ................................................................ 15, 18

**Statutes**

28 U.S.C. § 1391(b) ............................................................................................................. 20

28 U.S.C. § 1404(a) ............................................................................................................. 20

28 U.S.C. § 1406(a) ............................................................................................................. 20

CPLR § 202 ................................................................................................................... passim

CVA § 214-g ......................................................................................................................... 10

N.M. Stat. § 37-1-8 ............................................................................................................... 5

N.Y. CONST. art. I, § 6 .......................................................................................................... 12

N.Y. Educ. Law § 6509(1)(5)(a) .......................................................................................... 8

N.Y. Educ. Law § 6530(9)(a) ............................................................................................... 8, 9

N.Y. Exec. Law § 298-a ........................................................................................................ 9

N.Y. Penal Law § 130 ................................................................................................ 7, 8, 10, 11

N.Y. Pub. Health Law § 230(12)(b) .................................................................................. 8, 9

N.Y. Pub. Health Law § 3510(1)(m) ..................................................................................... 9

New York Penal Law § 130 ............................................................................................ 7, 10

**Rules**

Fed. R. Civ. P. 12(b)(3) ....................................................................................................... 20

Defendant Ghislaine Maxwell moves this Court for an order dismissing this case or transferring the case against her to the District of New Mexico.

## INTRODUCTION

Plaintiff's complaint is years too late, lacks the required specificity, and is filed in the wrong court. It describes events that allegedly occurred nearly three decades ago, and it details alleged conduct by Mr. Epstein while referring to Ms. Maxwell as an afterthought. When it does allege conduct by Ms. Maxwell, it alleges conduct that occurred in New Mexico, not New York. This Court should dismiss or transfer the case against Ms. Maxwell to New Mexico.

## BACKGROUND

Plaintiff claims that when she was either fifteen or sixteen years old, in 1995 or 1996, Mr. Epstein lured her to New York based on a promise of helping her get into college. Compl. ¶¶ 41, 51. With no alleged involvement of Ms. Maxwell, Mr. Epstein bought Plaintiff a plane ticket from Arizona to New York. *Id.* ¶ 51. Plaintiff's sister, Maria Farmer, was at the time purportedly working for Mr. Epstein as a purchaser of art. *Id.* ¶ 46.

Plaintiff claims that in New York, Mr. Epstein took her and her sister to a movie. *Id.* ¶¶ 53–54. With no involvement or participation of Ms. Maxwell, Mr. Epstein allegedly groped Plaintiff during the movie. *Id.* ¶ 54. Plaintiff returned to Arizona shortly after. *Id.* ¶ 55.

Sometime later, in the spring of 1996, Mr. Epstein called Plaintiff's mother in Arizona and proposed to sponsor a trip for Plaintiff to his ranch in New Mexico. *Id.* ¶ 57. Mr. Epstein told Plaintiff's mother that his ranch was the site of an educational program for high school students. *Id.* ¶¶ 56–57. According to the complaint, Mr. Epstein represented that Ms. Maxwell would be Plaintiff's chaperone. *Id.* ¶ 57. Mr. Epstein again bought a plane ticket for Plaintiff, mailing it to her mother in Arizona. *Id.* ¶ 58. The complaint does not allege that Ms. Maxwell contacted Plaintiff or her mother or arranged for Plaintiff's travel. *See id.* ¶¶ 56–58.

When Plaintiff arrived at the ranch, she claims she was the only student there. The complaint alleges that at the ranch, Ms. Maxwell pressured Plaintiff to give Mr. Epstein foot massages. *Id.* ¶ 59. It also alleges that Mr. Epstein and Ms. Maxwell took her to see a movie, during which Mr. Epstein touched her body against her will. *Id.* ¶ 60–61. The complaint does not allege that Ms. Maxwell touched Plaintiff or that she knew of Mr. Epstein's alleged touching.

Upon returning to the ranch, Plaintiff claims that Ms. Maxwell persuaded her to remove all her clothes so Ms. Maxwell could give Plaintiff a massage. *Id.* ¶ 62. Plaintiff alleges that Ms. Maxwell massaged Plaintiff and touched her intimate parts "against her will for the sexual benefit of Maxwell and Epstein." *Id.* ¶¶ 63–64, 65.

The following morning, Mr. Epstein allegedly got into bed with Plaintiff to "cuddle" and "physically restrained her with his arms and proceeded to press his body (including his genitals) against" her. *Id.* ¶ 67. The complaint does not allege that Ms. Maxwell was involved or participated in this incident or knew of it. *See id.* Plaintiff then returned to Arizona. *Id.* ¶ 70.

Plaintiff's complaint next devotes several paragraphs to describing the alleged sexual assault of her sister, Maria Farmer, at an Epstein property in Ohio. *Id.* ¶ 71–76. According to the complaint, after the assault Ms. Maxwell threatened Maria Farmer on behalf of Mr. Epstein, telling her: "We're going to burn all your art. And I just want you to know that anything you ever make will be burned. Your career is burned." *Id.* ¶ 72. This allegation is demonstrably false. Speaking for herself in 1996, Maria Farmer apparently told police that Mr. Epstein "call[ed] her and stated he was going to burn [her] painting and send her poloroids (sic) of the burnt paintings." There was no mention in the police report of Ms. Maxwell. *See* Ex. 1 (Aug. 29, 1996 Police Report by Maria Farmer). In any event, the complaint is devoid of any allegation that Ms. Maxwell ever threatened Plaintiff.

The complaint alleges that Maria Farmer reported the Ohio incident to both the NYPD's Sixth Precinct and to the FBI, neither of which took any action. *Id.* ¶ 73.[1] At that point, Maria Farmer spoke with Plaintiff, who allegedly told Maria of the events in New York and New Mexico. *Id.* ¶¶ 73–74. The sisters claim they took their story to Vanity Fair Magazine, which Plaintiff says declined to publish a story only after Mr. Epstein (but not Ms. Maxwell) "threatened and intimidated the magazine and Vanity Fair bent to those threats." *Id.* ¶ 75.

Plaintiff never claims she had contact with either Mr. Epstein or Ms. Maxwell after returning to Arizona from New Mexico, and she does not allege that Mr. Epstein or Ms. Maxwell ever threatened her or coerced her not to report her allegations. Yet, Plaintiff claims that "[o]ut of fear of what could happen to her and her family because of Epstein and Maxwell's great power, wealth, and connections that they had displayed to her, [she] did not tell anyone [other than her sister] about Epstein and Maxwell touching her against her will." *Id.* ¶ 70. Plaintiff's failure, for nearly thirty years, to file this lawsuit, was allegedly a product of "the fact that state and federal authorities, as well as the media, were not taking action against Epstein." *Id.* ¶ 76.

Plaintiff finally filed this lawsuit on November 12, 2019. Doc. 1. It alleges battery, false imprisonment, and intentional infliction of emotional distress.

## ARGUMENT

I.   **THE COMPLAINT, FILED NEARLY THREE DECADES AFTER THE EVENTS IT ALLEGES, IS BARRED BY THE STATUTE OF LIMITATIONS.**

Plaintiff's complaint is years too late. The complaint limits its allegations of tortious conduct by Ms. Maxwell to conduct allegedly occurring in New Mexico nearly three decades ago: Ms. Maxwell allegedly committed battery against Plaintiff in New Mexico in the spring of

---

[1] Curiously, Maria Farmer's Sixth Precinct report makes no mention of any alleged assaults by Mr. Epstein or Ms. Maxwell.  Ex. 1.

1996 by touching her intimate parts against her will during a massage at Mr. Epstein's ranch; Ms. Maxwell falsely imprisoned Plaintiff at the New Mexico ranch; and together, this conduct inflicted emotional distress.

The complaint does not allege that Ms. Maxwell was involved or participated in Mr. Epstein's "recruitment" of Plaintiff to New York in late 1995/early 1996 or the alleged groping of Plaintiff at a New York movie theater. Nor does the complaint allege that Ms. Maxwell ever threatened or coerced Plaintiff into not filing a complaint. In fact, Plaintiff does not allege that Ms. Maxwell ever contacted her in the nearly three decades since she was in New Mexico.

### A.      Standard of review.

In assessing a motion to dismiss, this Court need only assume the truth of the well-pleaded factual contentions in Plaintiff's complaint. *In re London Silver Fixing, Ltd., Antitrust Litig.*, 332 F. Supp. 3d 885, 895 (S.D.N.Y. 2018) (dismissing conspiracy and antitrust claims as implausible). It should disregard Plaintiff's conclusory allegations as well as those that improperly lump together Ms. Maxwell with Mr. Epstein. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Dismissal is appropriate when, as here, the complaint fails to allege timely claims for relief that are plausible on their face. *See Dennis v. JPMorgan Chase & Co.*, __ F. Supp. 3d __, No. 16-CV-6496 (LAK), 2020 WL 729789, at *5 (S.D.N.Y. Feb. 13, 2020) (complaint must plausibly allege that it is timely to survive a motion to dismiss).

### B.      The complaint is untimely under New Mexico and New York law.

The complaint alleges that Ms. Maxwell committed three torts against Plaintiff in New Mexico. While New York's "borrowing statute" allows non-residents like Plaintiff to sue in New York courts for torts occurring outside New York, the claims must be timely under both New

York law the law in the state where the tort allegedly occurred. Because all three causes of action are untimely under New Mexico and New York law, the complaint must be dismissed.

When, as here, "jurisdiction rests upon diversity of citizenship, a federal court sitting in New York must apply the New York choice-of-law rules and statutes of limitations." *Stuart v. Am. Cyanamid Co.*, 158 F.3d 622, 626 (2d Cir. 1998) (citing *Guaranty Trust Co. v. York*, 326 U.S. 99, 108–09 (1945)). "New York courts generally apply New York's statutes of limitations, even when the injury giving rise to the action occurred outside New York." *Id.* (citing *Stafford v. International Harvester Co.*, 668 F.2d 142, 147 (2d Cir. 1981)).

"This general rule, however, is subject to a traditional statutory exception, New York's 'borrowing' statute, C.P.L.R. § 202." *Id.* New York's borrowing statute permits a resident of another state (here, Texas)[2] to sue in New York for torts occurring outside New York (here, New Mexico) if the complaint is timely under the laws of New York **and** the state in which the tort occurred (again, New Mexico). CPLR § 202. The purpose of CPLR § 202 is to prevent "forum shopping by plaintiffs seeking the holy grail of the longer period." *Stuart*, 158 F.3d at 627.

New Mexico has a three-year statute of limitations for personal injury actions, N.M. Stat. § 37-1-8, and minors have one year from reaching the age of majority to begin such an action, N.M. Stat. § 37-1-10. At the latest, Plaintiff's claims expired sometime in 1999. Plaintiff's claims are untimely under New Mexico law and, thus, they are time-barred under CPLR § 202.

Similarly, under New York law, a plaintiff alleging battery, false imprisonment, and intentional infliction of emotional distress must commence her action within one year of the claim's accrual. CPLR § 215(3); *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 171 (S.D.N.Y. 2019). The complaint here was filed nearly three decades after Plaintiff's claims

---

[2] Plaintiff says she is a resident of Texas. Compl. ¶ 8.

accrued. Thus, unless New York law revives Plaintiff's untimely claims or tolls the statute of limitations, dismissal is required.

### C.     Plaintiff's claims cannot be revived under New York law.

Plaintiff, in her pre-motion response, did not deny that her claims are untimely under New Mexico Law. Doc. 48, at 3. Instead, Plaintiff contends that CPLR § 202 does not apply because New York's Child Victims Act (CVA), CPLR § 214-g, "provides for a revival window of civil claims '[n]otwithstanding any provision of law which imposes a period of limitation to the contrary.'" *Id.*[3] Plaintiff's complaint also points to CPLR § 215(8)(a). As explained below, however, neither provision saves Plaintiff's untimely complaint.

### i.     CPLR § 215(8)(a) does not revive Plaintiff's untimely claims.

Plaintiff's complaint points to CPLR § 215(8)(a), which in some cases allows a plaintiff to pursue otherwise untimely claims if she files them within one year of the termination of a criminal action against the defendant, if the criminal action concerned the same "event or occurrence" as the civil complaint. Compl. ¶¶ 82, 87, 93. But that provision does not apply here because Ms. Maxwell was never indicted, only Mr. Epstein was, and because the Epstein indictment did not concern the "event or occurrence" from which this civil complaint arises.[4]

### ii.     CPLR § 214-g does not and cannot revive Plaintiff's claims.

The CVA, CPLR § 214-g, purports to revive otherwise time-barred claims for injuries "suffered as a result of conduct which would constitute" a sexual offense under New York penal law. Plaintiff invokes CPLR § 214-g to save claims that expired nearly thirty years ago. The attempt fails because: (1) CPLR § 214-g does not apply to the claims against Ms. Maxwell; (2)

---

[3] Plaintiff has not claimed that New Mexico has a revival statute.
[4] The indictment charged conduct by Mr. Epstein between 2002 and 2005 in New York and Florida. Compl. Ex. A. Plaintiff's complaint against Ms. Maxwell concerns conduct allegedly occurring in 1995/1996 in New Mexico. Compl. ¶¶ 57–70.

CPLR § 214-g does not trump New York's borrowing statute, CPLR § 202, under which

Plaintiff must prove her claims are timely under New Mexico law (which concededly they are

not); and (3) even if CPLR § 214-g does apply, its application to Maxwell is unconstitutional.

### a.    CPLR § 214-g does not apply to Ms. Maxwell.

CPLR § 214-g by its terms does not apply to Ms. Maxwell because the conduct alleged

against her occurred in New Mexico, outside New York, and therefore "would [not] constitute" a

sexual offense under New York Penal Law § 130. CPLR § 214-g says:

> Notwithstanding any provision of law which imposes a period of
> limitation to the contrary . . . every civil claim or cause of action
> brought against any party . . . as a result of conduct which would
> constitute a sexual offense as defined in article one hundred thirty
> of the penal law [N.Y. Penal Law § 130] committed against a child
> less than eighteen years of age . . . is hereby revived, and action
> thereon may be commenced not earlier than six months after, and
> not later than one year and six months after the effective date of this
> section.

"It is fundamental that a court, in interpreting a statute, should attempt to effectuate the

intent of the Legislature." *Majewski v. Broadalbin-Perth Cent. Sch. Dist.*, 696 N.E.2d 978, 980

(N.Y. 1998). "As the clearest indicator of legislative intent is the statutory text, the starting point

in any case of interpretation must always be the language itself, giving effect to the plain

meaning thereof." *Id.* "A court cannot amend a statute by adding words that are not there." *Am.

Transit Ins. Co. v. Sartor*, 814 N.E.2d 1189, 1192 (N.Y. 2004).

The plain and unambiguous language of CPLR § 214-g shows it does not apply to

Plaintiff's untimely complaint. For it to apply, Plaintiff's claims against Ms. Maxwell must arise

from "conduct which would constitute a sexual offense as defined in" N.Y. Penal Law § 130.

Ms. Maxwell's alleged conduct, however, would "constitute a sexual offense as defined

in" N.Y. Penal Law § 130 only if it were committed ***in*** New York. *See People v. McLaughlin*,

606 N.E.2d 1357, 1359 (N.Y. 1992) ("Because the State only has power to enact and enforce

criminal laws within its territorial borders, there can be no criminal offense unless it has territorial jurisdiction."). Because the complaint concerns conduct allegedly committed in New Mexico, Ms. Maxwell's purported conduct "would [***not***] constitute a sexual offense as defined in" N.Y. Penal Law § 130.

Had the New York State Assembly intended otherwise—that is, had the State Assembly intended to revive claims for conduct occurring outside New York that, if committed within this state, would have constituted as defined in penal law N.Y. Penal Law § 130—it knew how to do so. In fact, the State Assembly could have done what it routinely does: include language making clear an intent for the statute to apply to conduct occurring outside New York.

Take New York law defining professional misconduct by physicians. It provides that it is professional misconduct to be

> 9.(a) . . . convicted of committing an act constituting a crime under:
>
> (i) New York state law or,
>
> (ii) federal law or,
>
> (iii) the law of another jurisdiction and which, *if committed within this state, would have constituted a crime under New York state law*.

N.Y. Educ. Law § 6530(9)(a) (emphasis added). This language makes clear that conduct occurring outside New York can constitute professional misconduct within New York.

The examples abound. *E.g.*, N.Y. Educ. Law § 6509(1)(5)(a) (defining as professional misconduct "[b]eing convicted of committing an act constituting a crime under: (i) New York State law or, (ii) Federal law or, (iii) The law of another jurisdiction and which, *if committed within this state, would have constituted a crime under New York State law*" (emphasis added)); N.Y. Pub. Health Law § 230(12)(b) ("When a licensee has pleaded or been found guilty or convicted of committing an act constituting a felony under New York state law or federal law, or

the law of another jurisdiction which, *if committed within this state, would have constituted a felony under New York state law* . . ." (emphasis added)); N.Y. Pub. Health Law § 3510(1)(m) (authorizing suspension of a license if the licensee "is convicted of certain crimes and the . . . conviction [is] under (i) New York state law; (ii) federal law; or (iii) the law of another jurisdiction which, *if committed within this state, would have constituted professional misconduct under New York state law*" (emphasis added)).

The State Assembly's choice not to use the conditional perfect tense ("would have") is dispositive of its intent. As the above examples show, when the State Assembly intends a law to apply to conduct occurring out of state which, "if committed within this state, would have constituted a crime under New York state law," it says so expressly. *See Touche Ross & Co. v. Redington*, 442 U.S. 560, 572 (1979) ("Obviously, then, when Congress wished to provide a private damage remedy, it knew how to do so and did so expressly."); *see, e.g.*, N.Y. Educ. Law § 6530(9)(a); N.Y. Pub. Health Law § 230(12)(b); N.Y. Pub. Health Law § 3510(1)(m). And the State Assembly easily could have done so in CPLR § 214-g, by saying that the statute revived otherwise time-barred claims based on "conduct which would constitute a sexual offense as defined in article one hundred thirty of the penal law or, if committed within this state, *would have constituted* a sexual offense as defined in article one hundred thirty of the penal law." *See* CPLR § 214-g. The legislature intentionally decided not to include this language.[5]

---

[5] If CPLR § 214-g had been written in the present tense, the State Assembly likewise could have shown an intent for it to apply to conduct occurring outside New York. It has done so countless other times. *E.g.*, N.Y. Exec. Law § 298-a (providing that New York's human rights law "shall apply as hereinafter provided to an act committed outside this state against a resident of this state or against a corporation organized under the laws of this state or authorized to do business in this state, *if such act would constitute an unlawful discriminatory practice if committed within this state* (emphasis added)).

Unlike these examples, CPLR § 214-g talks only of conduct "which would constitute a sexual offense as defined in" N.Y. Penal Law § 130. It does not speak to conduct which, if committed within New York, would have constituted a sexual offense as defined in article N.Y. Penal Law § 130. And absent that specific language—readily available to the State Assembly and routinely used—Ms. Maxwell's alleged conduct "would [***not***] constitute" a sexual offense under New York Penal Law § 130 because it occurred outside New York and in New Mexico. Interpreting CPLR § 214-g to revive Plaintiff's claims would require this Court to add language to the statute, which this Court cannot do. *See Am. Transit*, 814 N.E.2d at 1192 ("A court cannot amend a statute by adding words that are not there."). The CVA, § 214-g, thus does not apply to the case against Ms. Maxwell and cannot revive Plaintiff's time-barred claims.[6]

> **b.      CPLR § 214-g does not trump New York's borrowing statute, CPLR § 202.**

In response to Ms. Maxwell's pre-motion letter to this Court, Plaintiff argued that CPLR § 214-g trumps New York's borrowing statute, CPLR § 202, because the former statute says it applies "[n]otwithstanding any provision of law which imposes a period of limitation to the contrary." CPLR § 214-g; Doc. 48, at 3. This argument is misplaced.

CPLR § 214-g and CPLR § 202 can be read together to give effect to both. *See Friedman v. Connecticut Gen. Life Ins. Co.*, 877 N.E.2d 281, 286–87 (N.Y. 2007) ("[W]here possible, courts should harmonize all parts of a statute with each other . . . and give effect and meaning . . . to the entire statute and every part and word thereof." (cleaned up)). Recall that when "jurisdiction rests upon diversity of citizenship, a federal court sitting in New York must apply the New York choice-of-law rules and statutes of limitations," including New York's borrowing

---

[6] In no case can CPLR § 214-g revive Plaintiff's false imprisonment claim, because false imprisonment is not a "sexual offense" under New York Penal Law § 130.

statute, CPLR § 202. *Stuart*, 158 F.3d at 626. CPLR § 202 requires a complaint to be timely under **both** the laws of New York **and** the state in which the tort occurred (here, New Mexico).

When CPLR § 214-g revives claims based upon conduct that "would constitute a sexual offense as defined in" N.Y. Penal Law § 130 "[n]otwithstanding any provision of law which imposes a period of limitation to the contrary," CPLR § 214-g is referring to any provision of *New York* law that imposes a period of limitation to the contrary. CPLR § 214-g is a *New York* statute enacted by the *New York* legislature, which applies to and revives claims based on conduct that would violate *New York* penal law that would otherwise be untimely under *New York* statutes of limitations.

Here, as described above, CPLR § 215(3) required Plaintiff to commence her battery, false imprisonment, and intentional infliction of emotional distress claims within one year of their accrual. CPLR § 215(3); *Geiss*, 383 F. Supp. 3d at 171. As best, the effect of CPLR § 214-g in this case, then, is to excuse Plaintiff from complying with CPLR § 215(3). It revives Plaintiff's claims *only* insofar as CPLR § 215(3) barred them. By contrast, the effect of CPLR § 214-g is *not* to revive Plaintiff's claims insofar as New Mexico law bars them.

But New York's borrowing statute, CPLR § 202, requires Plaintiff's claims to be timely under both New York law **and** New Mexico law. Thus, at best, CPLR § 214-g solves half of Plaintiff's problem—it might render her claims timely under New York law when they would otherwise be untimely under CPLR § 215(3). But CPLR § 214-g cannot solve the other half of Plaintiff's problem—it cannot render her claims timely under New Mexico law.

Plaintiff's argument that CPLR § 214-g trumps CPLR § 202 would lead to forum shopping, which is the absurd result CPLR § 202 seeks to avoid. *See Stuart*, 158 F.3d at 627; *see also Lubonty v. U.S. Bank Nat'l Ass'n*, 139 N.E.3d 1222, 1225 (N.Y. 2019) (courts "interpret []

statute[s] so as to avoid an unreasonable or absurd application of the law"). If Plaintiff is right, courts in New York can expect to see a flood of lawsuits concerning conduct occurring in other states having little or no connection to New York. Plaintiffs will know that even if they could not bring a lawsuit in the state in which the conduct occurred, they can file suit in New York so long as there is personal jurisdiction over the defendant. But there's no reason to think that the New York State Assembly intended to override the decisions of other state legislatures that have opted not to revive expired claims based on conduct occurring within their own borders.

Accordingly, when read together, CPLR § 214-g and CPLR § 202 still require Plaintiff to show that her claims are timely under New Mexico law, since they are based on conduct occurring in New Mexico. Plaintiff has not disputed that her claims are *untimely* under New Mexico law, Doc. 48, at 3, and, as a result, they must be dismissed.

> ### c. Applying CPLR § 214-g to Ms. Maxwell would violate due process.

Disregarding CPLR § 202, and applying § 214-g notwithstanding the claims' untimeliness under New Mexico law, violates Ms. Maxwell's right to due process.

The New York Constitution guarantees due process of law. N.Y. CONST. art. I, § 6. This guarantee constrains the State Assembly's ability to enact "revival statutes," which are an "extreme exercise of legislative power." *Hopkins v. Lincoln Trust Co.*, 135 N.E. 267, 267 (N.Y. 1922) (Cardozo, J.). In New York, due process requires a "weigh[ing] [of] the defendant's interests in the availability of a statute of limitations defense with the need to correct an injustice." *In re World Trade Ctr.*, 89 N.E.3d 1227, 1239 (N.Y. 2017).

The New York Court of Appeals recently reaffirmed that "a claim-revival statute will satisfy the Due Process Clause of the State Constitution if it was enacted as a reasonable response in order to remedy an injustice." *Id.* at 1243. The injustice subject to this extraordinary

remedy is limited to when a "plaintiff could not have brought an action in a timely manner." *Doe v. Hartford Roman Catholic Diocese Corp.*, 119 A.3d 462, 512 n.58 (Conn. 2015) (discussing New York law); *see also Hymowitz v. Eli Lilly & Co.*, 539 N.E.2d 1069 (N.Y. 1989); *Gallewski v. Hentz & Co.*, 93 N.E.2d 620 (N.Y. 1950); *Robinson v. Robins Dry Dock & Repair Co.*, 144 N.E. 579 (N.Y. 1924); *Matter of McCann v. Walsh Constr. Co.*, 123 N.Y.S.2d 509 (N.Y. App. 3rd Dept. 1953), *aff'd without op.*, 306 N.Y. 904 (1954).

In *Robinson v. Robins Dry Dock & Repair Co.*, the New York Court of Appeals affirmed the constitutionality of a statute that revived the wrongful death actions of spouses of deceased workers. *Robinson*, 144 N.E. at 579. There, the wife of a deceased worker began collecting worker's compensation following her husband's work-related death; this was her exclusive legal remedy at the time. *Id.* at 579–80. More than two years later, the U.S. Supreme Court declared New York's workers' compensation law to be unconstitutional, which ended the wife's worker's compensation benefit. *See Knickerbocker Ice Co. v. Stewart*, 253 U.S. 149 (1920). By that time, however, the wife's wrongful death action was time-barred under New York law. *See Robinson*, 144 N.E. at 580. A claim by the wife for her husband's wrongful death also was not cognizable at any time during the applicable limitations period, because for that entire time worker's compensation was the exclusive remedy for the husband's work-related death. Because the spouses of deceased workers could not have brought a timely claim for wrongful death based on a work-related injury before the U.S. Supreme Court's ruling in *Knickerbocker Ice*, the Court of Appeals affirmed the propriety of the revival statute. *Id.* at 579, 582.

The Court of Appeals' decision in *Gallewski v. Hentz & Co.* similarly addressed reviving formerly time-barred causes of action that claimants were effectively prevented from asserting in a timely manner. In *Gallewski*, the Court of Appeals held that a statute enacted to retroactively

13

toll the statute of limitations for individuals residing in Axis-occupied countries during World War II comported with due process. *Gallewski*, 93 N.E.2d at 622–25. The Court noted that "the citizens and residents of occupied territory were, during such occupation, under a practical and total inability to commence action in the courts of this State to protect and effectuate their rights." *Id.* at 625. Because these plaintiffs were unable to assert timely claims under the applicable limitations period, the Court of Appeals in *Gallewski* concluded that the legislature's retroactive tolling of the otherwise applicable limitations period comported with due process. *Id.*

Likewise, in both *Matter of McCann v. Walsh Constr. Co.* and *Hymowitz v. Eli Lilly & Co.*, claims-revival provisions were held to comport with due process when they addressed claims that could not have been timely asserted. Both cases presented claims by plaintiffs who were afflicted by latent diseases where symptoms did not typically appear until after the applicable limitations period expired. *Matter of McCann*, 301 N.Y. at 511 (cassion disease is "of a slow-starting or insidious nature" and "very often . . . more than twelve months elapse[s] after the contraction of the disease before its presence [is] known or apparent"); *Hymowitz*, 539 N.E.2d at 1072 (the exposure to the drug diethylstilbestrol (DES) by pregnant mothers causes a latent injury in utero and "many claims [are] barred by the Statute of Limitations before the injury [is] discovered"). *See Hymowitz*, 539 N.E.2d at 1079; *see also Sweener v. Saint-Gobain Performance Plastics Corp.*, No. 1:17-CV-0532, 2019 WL 748742, at *8 (N.D.N.Y. Feb. 7, 2018) (citing *Hymowitz* and *Matter of McCann* in holding that CPLR § 214-g comported with due process because the claims-revival provision there allowed those "who suffer[ed] latent injuries stemming from environmental contamination[] to pursue claims that would otherwise be time-barred simply because a defendant's tortious conduct was unknown").

The New York Court of Appeals already has decided that numerous claimants asserting allegations of sexual abuse were not prevented from asserting their claims in a timely manner under the formerly applicable limitations period. *See Zumpano v. Quinn*, 849 N.E.2d 926 (N.Y. 2006). In *Zumpano*, the Court addressed actions alleging clergy sexual abuse for which the statute of limitations had long expired, but the plaintiffs sought equitable tolling of their limitations periods and asserted equitable estoppel against defendants. *Id.* at 927–28. The Court held, at the *motion to dismiss stage*, that all plaintiffs in both the individual and the 42-person action "failed to satisfy th[eir] burden" of "establish[ing] that subsequent and specific actions by defendants somehow kept them from timely bringing suit." *Id.* at 929. Concluded the Court:

> [E]ach plaintiff was aware of the sexual abuse he or she suffered at the hands of defendant priests. Certainly they had sufficient knowledge to bring an intentional tort cause of action against the individual priests. Plaintiffs were likewise aware that the priests were employees of the dioceses and could have brought actions against the dioceses, or at least investigated whether a basis for such actions existed.

*Id.* The Court thus affirmed the dismissal of both actions as time-barred.

The federal district court decision in *World Trade Center* also is instructive. While that decision was ultimately vacated based only on a threshold standing issue (not presented here), the court there invalidated a claims-revival provision under the New York State Constitution's Due Process Clause on the same basis asserted by Ms. Maxwell here. The statute at issue in that case revived otherwise time-barred claims by disaster-relief workers who were injured during the cleanup and rescue efforts following the September 11, 2011 terrorist attack on the World Trade Center. After canvassing the Court of Appeals' case law on the issue, the district court held that this claims-revival provision did not fit within the "narrow exception for revival statutes, and is unconstitutional under the Due Process Clause of the New York State Constitution." *In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 66 F. Supp. 3d 466, 476 (S.D.N.Y. 2014),

15

*vacated on other grounds*, 892 F.3d 108 (2d Cir. 2018). The district court reasoned that, unlike in

the Court of Appeals' precedent addressing this issue discussed above (*Gallewski*, *Robinson*,

*Matter of McCann*, and *Hymowitz*), the plaintiffs in World Trade Center were protected by a rule

that the limitations period on their claims did not begin to run until they had discovered their

injuries. *Id.* at 475–76. They thus did not face a "practical and total inability" to begin a timely

lawsuit, as in *Gallewski*, *Robinson*, and other cases in which claim revival has been allowed. *Id.*

at 474–75. The district court also noted that many plaintiffs had filed timely lawsuits. *Id.* at 476.

The claims-revival provision in the CVA is, in material respects, like the one at issue in

*World Trade Center*. In both instances, the legislature purported to revive claims by plaintiffs

who were not prevented from asserting them in a timely fashion. In *World Trade Center*, the

district court noted that the legislature had given as its justification, among other things, that

certain claimants were given incorrect information about their work conditions and did not know

the applicable limitations periods. *See id.* at 475. But the court determined those were not

grounds for enacting a claims-revival provision because "[t]hese rationales do not amount to the

'exceptional circumstances' justifying the 'extreme exercise of legislative power' that a revival

statute entails." *Id.* "[T]hose who wished to sue were not barred from doing so." *Id.* at 476.

Here, the legislature's attempt through CPLR § 214-g to revive formerly time-barred

claims based on certain alleged sexual abuse does not comport with the New York State

Constitution's Due Process Clause, at least as applied to Ms. Maxwell. Unlike all of the previous

situations in which the Court of Appeals has ruled that the "extreme" measure of reviving claims

survived due process scrutiny, Plaintiff here was not prevented from asserting timely claims and

they were not barred by law in 1995/1996.

16

To the contrary, Plaintiff admits she had no difficulty reporting her allegations years ago to her sister and Vanity Fair Magazine and that her sister had no problem reporting her allegations to the NYPD and the FBI. Compl. ¶¶ 73–75. That those organizations did not respond as Plaintiff wished is all the more reason she should have filed this lawsuit years ago.

Plaintiff's conclusory and bare assertion that she was prevented from filing her claim "[o]ut of fear of what could happen to her and her family because of Epstein and Maxwell's great power, wealth, and connections that they had displayed to her" is not plausible. Compl. ¶ 70; *see Dennis*, 2020 WL 729789, at *5 (to survive a motion to dismiss, complaint must plausibly allege that it is timely).  Plaintiff admits that upon leaving the ranch in New Mexico, she never again had contact with either Mr. Epstein or Ms. Maxwell. And she does not allege that either Mr. Epstein or Ms. Maxwell ever threatened her or coerced her into not filing a timely lawsuit. The complaint is devoid of any plausible allegation that Plaintiff could not have sued Ms. Maxwell in a timely fashion over a twenty-four (24) year period. Thus, under New York law, it would violate due process to allow CPLR § 214-g to revive Plaintiff's untimely claims.

To allow CPLR § 214-g to revive Plaintiff's claims would undermine the integrity of the judicial system and deny Ms. Maxwell her constitutional right to defend herself. Ms. Maxwell would have to rebut allegations of an individual who claims she was assaulted nearly thirty years ago. Ms. Maxwell would also be called to answer the for conduct of Mr. Epstein, who is dead. "[W]eighing the defendant's interest in the availability of statute of limitations defense with the need to correct an injustice," *Matter of World Trade Ctr*., 89 N.E.3d at 1239, underscores the due process limitation that constrained the legislature's authority here.

Finally, there are strong, actual, not merely hypothetical, reliance interests at issue on the statutes of limitations that have existed for many years. Moreover, Mr. Epstein's estate has

17

established a compensation fund for alleged victims, the Voluntary Claims Resolution Program

in the U.S. Virgin Islands. Plaintiff and her sister, Maria Farmer, have publicly provided notice

of their intent to participate in the Program. So have other alleged victims of Mr. Epstein. It

undermines the integrity of the judicial system for some individuals to participate in this

compensation fund while others attempt to revive long-expired claims in court.

### iii.    Plaintiff has not plausibly plead equitable tolling or estoppel.

Plaintiff points to two other bases for the timeliness of her complaint: equitable tolling

and equitable estoppel. Compl. ¶¶ 16-17. Neither doctrine saves Plaintiff's complaint.

Equitable tolling is unavailable in New York for state claims. *Jang Hoi Choi v. Beautri*

*Realty Corp.*, 22 N.Y.S.3d 431, 432 (N.Y. App. 1st Dept. 2016) ("[T]he doctrine of equitable

tolling is not available in state causes of action in New York."). In any event, Plaintiff's

invocation of the doctrine would fail for the same reasons her reliance on equitable estoppel fails.

These equitable doctrines require "extraordinary" factors that make it "unjust" to allow a

defendant to assert a statute of limitations defense. *See id.* (equitable tolling requires proof that a

plaintiff was "prevented in some extraordinary way" from exercising her rights); *Zumpano*, 849

N.E.2d at 929 (equitable estoppel requires proof that it would "would be unjust to allow a

defendant to assert a statute of limitations defense"). The doctrines should be "invoked sparingly

and only under exceptional circumstances." *Geiss*, 383 F. Supp. at 172.

As explained above, Plaintiff's own complaint proves that there was no impediment to

her filing this action within a timely fashion. "Plaintiff had sufficient knowledge of the facts and

of a basis for a cause of action within the limitations period, and yet [s]he failed to bring a timely

suit." *Jang Ho Choi*, 135 A.D.3d at 452. As in *Zumpano v. Quinn*, "plaintiff was aware of the

sexual abuse . . . she [allegedly] suffered at the hands of [Ms. Maxwell] . . . . Certainly [she] had

sufficient knowledge to bring an intentional tort cause of action. . . ."

Plaintiff's conclusory allegations to the contrary cannot survive a motion to dismiss.[7] Plaintiff does not allege that Ms. Maxwell or Mr. Epstein threatened or coerced her into not filing a lawsuit, or that she was misled as to the applicable statute of limitations. In fact, Plaintiff does not even allege *any* contact between herself and Ms. Maxwell or Mr. Epstein after 1996. The complaint points to *nothing* that actually or effectively prevented Plaintiff from filing her lawsuit for more than twenty years.[8]

What is ultimately dispositive, though, is that the complaint points to nothing Ms. Maxwell allegedly did in the year before its filing that prevented Plaintiff from filing the lawsuit. Assuming tolling could apply (which it can't), that period of tolling ended well before November 2, 2018, one year before the complaint was filed. And because the relevant statute of limitations in New York is one year, CPLR § 215(3), even tolling cannot save Plaintiff's complaint. Plaintiff

---

[7] Plaintiff's conclusory assertion of fear of retaliation or harm to reputation cannot support equitable tolling or estoppel. "New York law strongly disfavors equitable tolling based on fear of retaliation, except where duress is an element of the cause of action." *Geiss*, 383 F. Supp. 3d at 173. And "[f]ear of harm to a plaintiff's career cannot justify equitably estopping a defendant from asserting a time limitation period." *Id.* (quotation omitted).

[8] Federal Rule of Civil Procedure 8 requires, at a minimum, that a complaint give each defendant "fair notice of what the plaintiff's claim is and the ground upon which it rests." *Ferro v. Ry. Express Agency, Inc.*, 296 F.2d 847, 851 (2d Cir. 1961); *see also Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995). Here, when Plaintiff has no facts to allege against Ms. Maxwell, she deceptively claims that "Epstein and Maxwell": "committed" (Compl. ¶ 13), "recruited" (*id.* ¶ 25), "perfected" (*id.* ¶ 31), "arranged" (*id.* ¶ 58), "allowed" (*id.* ¶ 70), "intentionally committed" (*id.* ¶ 80), "intentionally and forcibly touched" (*id.* ¶ 81), "falsely imprisoned" (*id.* ¶ 85), "brought" and "prevented" (*id.* ¶ 86), committed "criminal acts" (*id.* ¶¶ 88, 94), and had a plan to "recruit, entice and assault" (*id.* ¶ 91). This Court should disregard the allegations that merely lump together Ms. Maxwell with Mr. Epstein. *See Ochre LLC v. Rockwell Architecture Planning & Design, P.C.*, No. 12 CIV. 2837 KBF, 2012 WL 6082387, at *6 (S.D.N.Y. Dec. 3, 2012), *aff'd*, 530 F. App'x 19 (2d Cir. 2013) (explaining that "[w]here a complaint names multiple defendants, that complaint must provide a plausible factual basis to distinguish the conduct of each of the defendants" and holding that the "failure to isolate the key allegations against each defendant supports dismissal under the standards set forth in *Twombly* and *Iqbal*"). Lumping aside, there is nothing in the complaint to show that Ms. Maxwell ever did or said anything to prevent, mislead, or discourage Plaintiff from filing the complaint in a timely manner.

cannot plausibly allege that the statute of limitations was tolled for nearly thirty years, when she doesn't even allege contact with Ms. Maxwell after leaving the New Mexico ranch in 1996.[9]

## II.  IF NOT DISMISSED, THE CASE AGAINST MS. MAXWELL SHOULD BE TRANSFERRED TO THE DISTRICT OF NEW MEXICO.

The Southern District of New York is not the proper venue for Plaintiff's claims against Ms. Maxwell. *See* Fed. R. Civ. P. 12(b)(3) (authorizing a motion to dismiss for "improper venue"). Title 28, subsection 1391(b)(1) does not authorize venue here because Ms. Maxwell is not a resident of New York, nor apparently is the Estate of Mr. Epstein. And subsection (b)(2) also does not authorize venue here because the allegations against Ms. Maxwell concern conduct occurring exclusively in New Mexico and not New York: Ms. Maxwell allegedly sexually assaulted plaintiff in New Mexico (battery) and held plaintiff against her will in New Mexico (false imprisonment), thereby inflicting emotional distress. Because Ms. Maxwell's alleged conduct occurred in New Mexico, venue is improper in this Court under 28 U.S.C. § 1391(b). Thus, under Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. §§ 1406(a) and 1404(a), this Court should dismiss the complaint or transfer the case against her to the District of New Mexico.

Alternatively, Plaintiff's claims against Ms. Maxwell should be severed from the claims against Mr. Epstein's estate. Ms. Maxwell will be prejudiced otherwise, given the allegations against Mr. Epstein and the inability of Ms. Maxwell to effectively defend herself now that Mr. Epstein is dead. Even if venue is proper here against Mr. Epstein's estate (which is doubtful, since the estate is apparently a resident of the U.S. Virgin Islands), it is improper in the case against Ms. Maxwell. The case against Ms. Maxwell should proceed, if at all, in New Mexico.

---

[9] The result is the same if New Mexico law applies to Plaintiff's assertion of equitable tolling and estoppel. *See Slusser v. Vantage Builders, Inc.*, 306 P.3d 524, 531, 533 (N.M. App. 2013) (describing burden of equitable tolling and estoppel under New Mexico law).

**CONCLUSION**

For these reasons, this Court should dismiss the case or transfer the case against Ms.

Maxwell to the District of New Mexico.

Dated: May 20, 2020.


Respectfully submitted,


*/s/ Laura A. Menninger*
Laura A. Menninger (LM-1374)
HADDON, MORGAN AND FOREMAN, P.C.
150 East 10th Avenue
Denver, CO 80203
Phone:   303.831.7364
Fax:      303.832.2628
lmenninger@hmflaw.com

*Attorney for Ghislaine Maxwell*

**CERTIFICATE OF SERVICE**

I certify that on May 20, 2020, I filed this Corrected Memorandum of Law in Support of Defendant Ghislaine Maxwell's Motion to Dismiss with the Clerk of Court through CM/ECF, which will send notice of the filing to all parties of record.

*/s/ Nicole Simmons*