# Exhibit A

```
 1                      UNITED STATES DISTRICT COURT
                       SOUTHERN DISTRICT OF NEW YORK
 2

 3  ----------------------------------------X
                                            :
 4  DOE 1, et al.,                          : 19-CV-07675 (GBD)
                                            :
 5                    Plaintiffs,           :
                                            :
 6              v.                          :
                                            : 500 Pearl Street
 7  JEFFREY EPSTEIN, et al.,                : New York, New York
                                            :
 8                    Defendants.           : November 21, 2019
    ----------------------------------------X
 9  VE,                                     :
                                            :
10                    Plaintiff,            : 19-CV-07625 (AJN)
                                            :
11              v.                          :
                                            :
12  NINE EAST 71st STREET, et al.,          :
                                            :
13                    Defendants.           :
    ----------------------------------------X
14          TRANSCRIPT OF CIVIL CAUSE FOR CONFERENCE
15         BEFORE THE HONORABLE DEBRA C. FREEMAN
                UNITED STATES MAGISTRATE JUDGE
16

17  APPEARANCES:
18
    For Jane Doe 1:          ARICK W. FUDALI, ESQ.
19                           The Bloom Firm
                             85 Delancey Street, Suite 20
20                           New York, New York 10002

21
                    [Appearances continue next page.]
22

23
    Court Transcriber:       MARY GRECO
24                           TypeWrite Word Processing Service
                             211 N. Milton Road
25                           Saratoga Springs, New York 12866


    Proceedings recorded by electronic sound recording,
    transcript produced by transcription service
```

```
 1                                                                  2

 2

 3    APPEARANCES CONTINUED:

 4
      For VE:                 BRADLEY J. EDWARDS, ESQ.
 5                            BRITTANY HENDERSON, ESQ.
                              Edwards Pottinger LLC
 6                            425 North Andrew Avenue, Suite 2
                              Fort Lauderdale, Florida 33301
 7
      For Financial Trust,    BENNET J. MOSKOWITZ, ESQ.
 8    Indyke, Kahn, NES,      CHARLES GLOVER, ESQ.
      Nine East 71st:         Troutman Sanders LLP
 9                            875 Third Avenue
                              New York, New York 10022
10
      For other Plaintiffs:   DAVID BOIES, ESQ.
11                            SIGRID McCAWLEY, ESQ.
                              JOSH SCHULER, ESQ.
12                            Boies Schiller Flexner
                              401 East Las Olas Blvd., Suite 1200
13                            Fort Lauderdale, Florida 33301

14                            ROBERTA KAPLAN, ESQ.
                              KATE DONNEGER, ESQ.
15                            DAVID BRODY, ESQ.
                              LAURA STAR, ESQ.
16                            ALAN GOLDFARB, ESQ.
                              ANDREW POSEN, ESQ.
17                            MARIANN WANG, ESQ.
                              DANIEL MULLKOFF, ESQ.
18

19

20

21

22

23

24

25
```

3

1          THE COURT:  Good morning.

2          MALE SPEAKER:  Good morning.

3          FEMALE SPEAKER:  Good morning, Your Honor.

4          THE COURT:  Ordinarily we'd start by calling the

5    case but we have a number of cases here and rather than do

6    this in a tedious way, we've asked everyone to sign in on an

7    appearance sheet.  And I just want to make sure I know who

8    everyone is.  So first, on plaintiff's side in these various

9    cases, these are cases, just for the record, these are cases

10   that are brought by various plaintiffs against for shorthand

11   the Estate of Jeffrey Epstein.

12          Can I know who Brad Edwards and Brittany Henderson

13   are?

14          MR. EDWARDS:  Yes, Your Honor.  Brad Edwards.

15          MS. HENDERSON:  Brittany Henderson.

16          THE COURT:  Okay.  Arick Fudali?

17          MR. FUDALI:  Good morning, Your Honor.  Arick

18   Fudali.

19          THE COURT:  Good morning.  Roberta Kaplan?

20          MS. KAPLAN:  Good morning, Your Honor.

21          THE COURT:  And Kate Donneger [Ph.]?

22          MS. DONNEGER:  Good morning, Your Honor.

23          THE COURT:  Good morning.  David Brody, Laura Star,

24   Alan Goldfarb and Andrew Posen [Ph.].

25          MR. BRODY:  Good morning, Your Honor.  David Brody.

4

1          MS. STAR:  Laura Star.

2          MR. POSEN:  Andrew Posen [Ph.].

3          MR. GOLDFARB:  Alan Goldfarb.

4          THE COURT:  Got it.  Then I have David Boies, Sigrid

5  McCawley, Josh Schiller.

6          MR. BOIES:  Good morning, Your Honor.  David Boies.

7          MR. SCHILLER:  Josh Schiller.  Good morning.

8          MS. McCAWLEY:  Sigrid McCawley.

9          THE COURT:  Got it.  Marion Wang and David Mullkoff.

10         MS. WANG:  Mariann Wang.  Daniel Mullkoff will join

11  me later.

12         THE COURT:  Okay.

13         MS. WANG:  Good morning.

14         THE COURT:  Good morning.  And on defendant's side,

15  well, you have a fewer number of people so why don't you just

16  introduce yourselves?

17         MR. MOSKOWITZ:  Good morning, Your Honor.  Bennet

18  Moskowitz; Troutman Sanders, here with my colleague Charles

19  Glover, and we represent the co-executors of the Estate of

20  Jeffrey E. Epstein as well as with certain exceptions various

21  other defendants in the actions for which we're here today.

22  To explain that a little further --

23         THE COURT:  That's all right.

24         MR. MOSKOWITZ:  That's fine.

25         THE COURT:  For the time being, that's fine.

5

1          MR. MOSKOWITZ:  Thank you.

2          THE COURT:  All right.  So the first thing I want to

3  do is just explain what my role is in these cases and perhaps

4  what my role isn't in these cases.  First of all, I don't know

5  how much you all know about the inner workings of the court

6  but when a civil case comes into this court it is assigned to

7  a district judge and it is designated to a magistrate judge.

8  Or a magistrate judge is designated on the case.  Having a

9  magistrate judge such as myself designated on a case does not

10 mean that I do anything on the case.  It usually doesn't even

11 mean I know that the case is in front of me at all.  And

12 certainly, it doesn't give me authority to act.  The authority

13 to act comes from an order of reference by the district judge

14 on that case.  There is a difference between a designation and

15 a reference.  When a district judge refers a case to a

16 magistrate judge, the docket for that case will have an entry

17 that says order of reference.  The order of reference will

18 specify what it's for.  In these cases, a number of the

19 district judges have referred the cases to me for what's

20 called general pretrial supervision.  General pretrial

21 supervision includes supervising the discovery process,

22 certain motions that are not dispositive motions, seeing if I

23 can assist with settlement, scheduling matters.  It does not

24 include dispositive motions, making reports and

25 recommendations on dispositive motions unless the order of

6

1   reference says that.  And an order of reference can be

2   anything as narrow as can you work on one very particular

3   thing or can you assist with settlement?  To as broad as on

4   the parties' consent it's before you for all purposes.

5          The decision was made, as I understand it, that as

6   an institutional matter all these cases were not going to be

7   placed before a single district judge.  But it was also

8   decided that they would be designated to a single magistrate

9   judge so that if the district judges wanted to refer for, for

10  example, discovery supervision or to aid in settlement, that

11  would be before a single magistrate judge, and I am that lucky

12  magistrate judge.  But not all of the cases that we've seen

13  come into the court have been referred to me at this time.  So

14  you have to look at the dockets in your cases, and new ones as

15  they come in because I'm sure some new ones will come in, and

16  see if there is actually an order of reference.  Now, you may

17  see a different magistrate judge designated and it may have

18  slipped through the cracks.  A lot of these are just -- they

19  come out of the wheel and it's random.  There's one I know

20  that's still showing a designation to Judge Fox.  I think it

21  will be re-designated to me.  If you're noticing that and

22  you're not noticing a re-designation to me, you can just give

23  our chambers a call and bring it to our attention and we can

24  look into that.

25          But even if they are all designated to me, which I

 1   think is the plan, again, they may or may not all be referred

 2   to me.  Right now there are orders of reference in, for

 3   general pretrial supervision, in one, two, three, four, five,

 4   six, seven, eight, and I believe there will be nine because

 5   Judge Gardephe just signed one, nine of the cases out of 14.

 6   Judge Buchwald has one case that is 19-CV-10474.  I do not

 7   believe she is going to refer.  I think she prefers to

 8   supervise the case herself.  And there are a couple where I

 9   just don't know yet.  And of course I think there's one that

10   may not even be assigned to a district judge yet.  And again,

11   they're still coming in.  So just be aware of that because

12   there's a good chance that I'm going to be supervising your

13   case for discovery and for non-dispositive disputes for

14   scheduling, for seeing if I can assist with settlement.  But

15   there is also a chance that I will not be.  All right?  And in

16   particular right now I know that Judge Buchwald does not wish

17   me to supervise hers.

18          In addition, Judge Schofield has two cases right

19   now.  They are 19-CV-10475 and 19-CV-10577.  I believe she

20   scheduled her own conference a little farther down the road.

21   I think she still wants to go forward with that but I

22   anticipate that at some point either before then or after then

23   she is likely to refer to me as well, but she wants to get a

24   handle on it herself.

25          So district judges are individuals.  They handle

8

1   things in individual ways sometimes.  And just be aware

2   dispositive motions will go in front of them unless they are

3   specifically referred to me.  And if any order of reference is

4   narrow, you have to look at it, see what it says, and

5   understand that's the particular reason it's before me.  All

6   right?

7          So with that said, I nonetheless wanted to give

8   notice to anyone who's on these cases that I was having this

9   conference so that you could be informed, so that you could be

10  present if you have an interest, and you could hear what's

11  said.  So that's number one.

12         Number two, I have seen in the press and in some of

13  the correspondence that was put in front of the Court in one

14  of the cases that there's some talk about the estate working

15  toward coming up with a settlement idea, concept, a plan for

16  trying to create a fund or do something.  I've also seen some

17  murmurings, I don't know if they're true or not, that not all

18  of the plaintiffs' attorneys might be fully on board with the

19  process that's being set up which may not have been involving

20  them.

21         So I'd like to understand what is going on on that

22  front.  And if it is possible to have these cases put on a

23  settlement track, I'd like to make sure that everyone's on

24  board with the process of developing a plan for that and to

25  get a feel for what it's going to entail, potential time line

9

1   issues that are involved so that we can first see before we

2   get into discovery issues other kinds of squabbles, see if in

3   fact settlement is possible and we can move toward that.

4           So let me start on defendant's side since rumor has

5   it, and see what you have to say on that.

6           MR. MOSKOWITZ:  Good morning, Your Honor.  Would you

7   like me to stand or --

8           THE COURT:  It's okay.

9           MR. MOSKOWITZ:  I'm happy to.  I'm glad you raised

10  this because one of the things I wanted to bring to Your

11  Honor's attention is that having assumed, although I don't

12  like assumptions, that you may have seen in the press that

13  there is some kind of a claims program, I wanted to actually

14  take the opportunity today to explain to you briefly what is

15  going on.  And since you asked specifically, I'll start there.

16

17          So there is what I feel confident in calling an

18  extraordinary opportunity that has already started that can

19  lead to an alternative to all this litigation.  A lot of

20  people here as you can see.  And this would be an

21  extraordinary opportunity also to conserve party and judicial

22  resources.  And what happened is almost a week ago exactly the

23  co-executors, and this is probably some of the stories you

24  have seen, filed through counsel, not us, through estate

25  counsel in US Virgin Islands where the will is being probated,

10

1   an application for expedited approval of a claims

2   administration process.  So if I can just briefly explain what

3   that action means and what was actually filed because with

4   respect to everyone in the room, I don't know that every story

5   was as accurate as each other.  So the filing was for approval

6   to have the process go forward.  I fully expect it will be

7   approved.  I'm not the Court, obviously.  But I have every

8   reason to believe it will be promptly approved.  What it is

9   not is actually the nuts and bolts of how the program will

10  work.  What it does is it says the executors have selected

11  very esteemed people, Kenneth Feinberg who many view, I

12  believe rightfully so, is the nation's leading claims

13  administration expert.  Jordana Feldman, who is also a leading

14  expert.  She actually just very recently left her position as

15  deputy special master of the September 11th victim compensation

16  fund.  And she has demonstrated through that profound empathy

17  for victims, deep commitment to fairness of process, fairness

18  of outcome.  And also Camille Viras [Ph.] who has worked with

19  Mr. Feinberg over many years and is also a leading expert.  I

20  selected those three people to design, and then Ms. Feldman to

21  administer the program.  However, what's happening now is now

22  that the filing has been made, and this is all in the filing

23  and for any details I don't have I would encourage anyone who

24  has questions on the plaintiff's side to reach out to the

25  program administrators and designers for whom I don't speak

1   because they're fully independent.  But what the application

2   laid out is basically the overview of what the program is and

3   is not leaving open what will be the protocol for the design

4   of how the program works on a finer basis to be designed now

5   with input invited from every plaintiff's attorney sitting

6   here today, their clients, and anyone else who's out there

7   that is contemplating bringing a claim against the estate

8   related to, you know, these general sexual abuse allegations.

9   So everyone is invited to provide input.

10          Ms. Feldman will have complete autonomy.  She has

11  completed autonomy as to decision-making authority over the

12  program operations and to claim determinations.  The estate

13  has no authority, will have no authority to modify or reject

14  Ms. Feldman's decisions on any basis or as to any claim.  The

15  claimants will retain their rights unless and until they

16  actually accept a determination.  So in other words, this

17  again, all through the filing and what's been reported in the

18  press, everyone in this room, their clients can, it's

19  voluntary, but again, extraordinary opportunity, they can

20  through the entire process of the claims program, find out if

21  they're eligible to receive a claim determination, receive a

22  claim determination, and then decide do they want to accept it

23  or not.  Unless they accept it and sign a release, all their

24  legal rights in terms of these lawsuits are preserved.  So I

25  will say right now, and it's probably not necessarily a

12

1  discussion for today, but it's directly relevant to what

2  you've asked me about, we of course on the co-executors side

3  are more than willing to work with plaintiffs to stay actions,

4  toll claims, whatever they need to preserve their claims so

5  they have no prejudice if they also then go forward to see if

6  the claims process can resolve their claim in a much more, you

7  know, general I shall say, more efficient than most civil

8  litigation works in this country, and confidentially which I

9  should point out means that it's a confidential process and

10  the estate itself is bound by certain confidentiality.  But

11  the claimants are more than free absent, you know, certain

12  things and we worked on the protocol, to go out and tell their

13  stories if they still want to.  So that's what I mean when I

14  say confidential.  I know there have been a lot of concerns

15  about people wanting to proceed anonymously so that the claims

16  process is great for that concern too.

17          There is no cap as I understand it on the claims

18  determinations meaning whatever the claims administrators

19  decide in their expert judgment should be awarded to someone

20  there's not going to be an arbitrating limit in any way on

21  what that is.  Again, encourage anyone with specific questions

22  in that regard to weigh in on the protocol and to ask the

23  administrators themselves.  And I would just like to say that,

24  you know, because of this extraordinary opportunity, I think

25  it would be a bad outcome for the Court, a bad outcome for all

13

1    the parties in here on both sides for these cases to move full

2    steam ahead while this opportunity is now live.  I mean the

3    approval says the timing will be prompt.  The claims

4    administrators expect that within 90 days or so of the Court's

5    approval of the filing they'll start receiving claims.  This

6    is not going to be a long drawn out thing.  And I see no

7    benefit to in the meantime having people, you know, clutter

8    these dockets with things that could probably, we hope, and I

9    expect and hope, will ultimately be avoided forever.

10           THE COURT:  All right.  One thing I forgot to say up

11   front is you don't see a court reporter sitting here.  We do

12   have electronic recording equipment which means that if all

13   goes well there should be a recording of this conference.  And

14   so if anyone wants to have a transcript made, that's possible.

15   And this is an on-the-record conference.  If you're not

16   familiar with how to go about obtaining a transcript, I think

17   most people are, but if you're not, you can order it through

18   the court's website.  The website was just redesigned so the

19   instructions I used to give people about this are now a little

20   different.  But I believe that up at the top of the website

21   you'll see a few horizontal lines that suggest maybe there's a

22   drop down menu there.  And if you click on it, you should find

23   something about courtroom technology.  And if you follow

24   through and scroll down on that page you should find something

25   about what's called electronic court reportings or ECR which

14

1   will tell you how to go about ordering a transcript.

2          Because we do not have a court reporter and because

3   any record will be through somebody typing up what they are

4   hearing on a recording, I'm going to ask anyone who speaks to

5   introduce yourself each time before you speak so that there's

6   no confusion as to who's speaking.  That was Mr. Moskowitz

7   speaking, correct?

8          MR. MOSKOWITZ:  Correct, Your Honor.  Thank you.

9          THE COURT:  Correct.  Okay.  So if anyone else wants

10  to speak on this subject, just please identify who you are

11  again because there are a lot of you on plaintiff's side.

12  Anyone on plaintiff's side want to say something on the

13  subject?

14         MS. KAPLAN:  Your Honor, Roberta Kaplan.  I'm

15  counsel for the pseudonymous plaintiff in the case pending

16  before Judge Failla.

17         You heard I think a number of times Mr. Moskowitz

18  use the word extraordinary.  And on that word and perhaps that

19  word only I'm in full agreement with Mr. Moskowitz.  I have

20  been -- I and many of my counsel here have been litigating in

21  this courthouse for combined decades and we are approached the

22  other side as a group many weeks ago to try to talk about,

23  negotiate, and be involved in a settlement process that would

24  be set up to administer claims for 14, 15, 16-year-old

25  children who were criminally abused, sexually abused by Mr.

1  Epstein.  There was radio silence, complete radio silence on

2  their end for week after week despite repeated entreaties from

3  myself and others for us to have involvement in who was

4  selected and who would be in charge of this.  These are women

5  who want agency over their lives, number one?  Two, what the

6  procedure would be.  And three, Your Honor, perhaps most

7  importantly, how much money would be set aside?  We have

8  basically no information about what's in the estate, what

9  assets are in the estate, what assets are not in the estate,

10 who is the beneficiary of the estate.  We are told it's Mr.

11 Epstein's brother but we have no due diligence on that.  And

12 we said to the other side that before this process was created

13 we thought we were entitled to some due diligence about what

14 assets are being put on the table to settle claims and what

15 assets are going to go to Mr. Epstein's brother.  We've had

16 zero disclosure about that.  We've had zero discussions about

17 who the person would be and how to set it up.  I'm always,

18 Your Honor, and I think I speak for everyone here, we are

19 always willing to keep an open mind about settlement.  But

20 given the way that this has been created, the secret

21 unilateral way that this has been created that frankly was

22 incredibly disrespectful to these women who have already

23 suffered criminal horrible abuse, we have serious doubts.  And

24 the idea that we would stay any of these matters in favor of

25 the process that he described I think would be irrational for

1  many of us.  I don't know if Your Honor has any questions but

2  at least in my case I think that's our reaction.

3          THE COURT:  I'll hear from anyone else who wants to

4  be heard on this topic.

5          MR. EDWARDS:  Sure.  Your Honor, Brad Edwards.  I'm

6  here on behalf of VE, Catlin [Ph.] Doe, Priscilla Doe, and

7  Lisa Doe for plaintiffs proceeding under pseudonyms.

8          I agree with most of what Ms. Kaplan said.  I will

9  say that it seems to me that this slow developing vague

10 settlement concept, once it gets set up it might be okay or it

11 might be good for some people.  It doesn't make any sense at

12 all that is an all or nothing thing meaning we have said we're

13 willing to talk settlement as per our Rule 26 obligations with

14 any of the individual plaintiffs.  And what I understand is

15 we're not going to do that.  It is either you're going to be a

16 part of this process like it or not, and you may like it, you

17 may not, you don't know much about it, we can't tell you much

18 about it, but we hope that you'll just stay your actions while

19 we try to develop what it is or is not.  That doesn't seem

20 like it's a very responsible way to approach this.  There

21 could also be some discussion on individual claims along the

22 way especially lawsuits that have already proceeded.  I'm just

23 going to just give you an example.  I filed the case on behalf

24 of VE more than 60 days ago.  We've already had our Rule 26

25 conference.  I have an initial pretrial conference still set

17

1    for December 6.  I would say that trial could be had by July.

2    These are very simple cases.  Why in the world would we be

3    made to stay this case basically for at least 90 more days for

4    this thing to get set up and time to then go through the

5    process.  We could have had a trial by the time that we even

6    learn what this process is, so that I could educate my clients

7    on whether or not this might or might not be a good deal.  So

8    I think it only makes sense --

9              THE COURT:  Which case are you talking about again?

10             MR. EDWARDS:  VE.  It is --

11             THE COURT:  Before Judge Nathan?

12             MR. EDWARDS:  Yes.

13             THE COURT:  So she has a conference on which day?

14             MR. EDWARDS:  December 6.  And we held our Rule 26

15   conference November 15th.

16             THE COURT:  And do you think this case can go to

17   trial that fast?

18             MR. EDWARDS:  Yes, Your Honor.  I'm very familiar

19   with these cases in that I litigated when Mr. Epstein was

20   alive these same types of cases for over ten years.  So I'm

21   intimately familiar with the facts.  They are very simple

22   cases to try.  I think that by next summer they could be ready

23   for trial.  But certainly, we are ready to propound discovery.

24   We have less than five depositions to take in the case and

25   we're ready to go.  I don't want that to be delayed because

18

1  we're trying to set up what is, as you can tell, very slow

2  developing vague concept that might be acceptable or might

3  not.  So I just don't want for the plaintiffs who are already

4  pursuing these actions to be prejudiced waiting for something

5  that's being unilaterally created.  And we don't have great

6  confidence that many plaintiffs are going to opt in but we

7  have an open mind and are willing once it's set up to engage.

8  That's just not the time right now.  So that's our position as

9  it stands.

10            THE COURT:  Anyone else?

11            MS. McCAWLEY:  This is Sigrid McCawley and myself

12  along with David Boies and Josh Schiller, we represent five of

13  the victims who filed suit to date.

14            I echo Ms. Kaplan's concerns.  We have been part of

15  this dialogue with the reach out to help craft something that

16  would be responsible and reasonable for the victims who are at

17  issue here and the fact that the defendants unilaterally

18  selected a group without that input I think is inappropriate.

19  We are learning more about it today obviously so we'll reserve

20  final judgment on that.  We are of course open, and our

21  clients are open, to discussing the possibility of settlement

22  but I do have significant concerns about what they filed in

23  the USVI.

24            THE COURT:  Anyone else?  All right.  For cases to

25  settle, I'm going to direct this to defendants, for cases to

19

1   settle there has to be not just interest on both sides but

2   there has to be seats at the table on both sides.  There has

3   to be willingness to participate from both sides.  Settlement

4   is uniquely non-unilateral.  And if the defendants are really

5   interested in trying to get these cases resolved outside of

6   the litigation context, then you have to do more than just say

7   they're invited to the table and some window of time.  There

8   has to be a real concerted effort to get people talking to

9   each other and to get plaintiffs' counsel on board with what

10  you're trying to do.  And they may or may not be so readily on

11  board.  And you have to, on defendant's side, be willing to

12  have an open mind, you know, and have people who are willing

13  to talk and maybe bend and maybe rethink if plaintiffs have a

14  different idea and the different idea's a good one.  So this

15  being presented to them as well this is what it's going to be

16  and you can have some input after we've already figured out

17  some basics may not be sitting real well.

18          MR. FUDALI:  May I address that, Your Honor?

19          THE COURT:  Sure.

20          MR. MOSKOWITZ:  I don't think that that's how we

21  view this.  Defendants' counsel are correct.  Many of them

22  reached out to us and said they would welcome a claims

23  administration program.  It is true that the co-executors

24  vetted and carefully selected Ken Feinberg, Jordana Feldman,

25  and Camille Viras, like I said, unquestionably the leading

1   people in the field, to be independent claims administrators.

2   So this is not a situation where we've set up a --

3          THE COURT:  Right.  But they were -- but these

4   independent claims administrators were selected by one side

5   and not agreed upon by both.

6          MR. MOSKOWITZ:  Absolutely.  And I think Mr.

7   Feinberg's 98 percent or so participation rate in the 9/11

8   fund speaks for itself as well as his experience with the

9   church sexual abuse system, claims process in the BP oil

10  spill.  All of these situations, I don't believe that

11  claimants went out and hired Mr. Feinberg yet they were very

12  successful programs.  And here nothing's been fully baked.

13  All that was in the public filing, the very public filing that

14  I guess I heard some people aren't aware of the details and I

15  absolutely encourage them to read it, is that the program is

16  now going to be set up.  The protocol is everything for how

17  the program works is my understanding.

18          THE COURT:  Well, are the names of --

19          MR. MOSKOWITZ:  And that is when the sides should

20  come together and the administrators I fully expect and

21  understand will be in communication if they aren't already.  I

22  don't know.

23          THE COURT:  Let me interrupt you for a second.

24          MR. MOSKOWITZ:  Sure.

25          THE COURT:  Are the names of the administrators, the

1   choice of the administrators, is that fully baked?  Or is

2   there a possibility to add someone to that group for example?

3            MR. MOSKOWITZ:  I don't know about the latter, but

4   yes, they have been selected as the administrators.  I mean

5   another thing I point out is that -- another thing that's

6   unusual in this situation is that the estate is subject to the

7   probate court.  So what was presented to them was a very good

8   faith above and beyond effort to.  I can assure you, though I

9   don't speak for the estate counsel and I don't speak for the

10  administrators that the co-executors are hiring Ken Feinberg,

11  Jordana Feldman, Camille Viras, have a very sincere desire to

12  have a successful program that can resolve in a much more

13  efficient resolution of claims in a non-adversarial fashion.

14  I mean a lot of careful vetting and due diligence went in on

15  their end and I do understand that some of the plaintiffs'

16  lawyers maybe had different picks of who they wanted to be.

17  Some of them I should say as well were rather inflexible in

18  that regard.  And it is correct we didn't choose necessarily

19  who their top people are.  But this notion that we've gone out

20  and we're imposing this vague thing on them I don't think it's

21  fair.  And again, they're right, it's voluntary.  I would hope

22  that they appreciate, like I said, that this is a significant

23  opportunity to resolve claims that will not result in any

24  detriment.

25            I also want to just quickly touch upon Mr. Edwards

22

1    raised the timing.  He did litigate cases not in this court.

2    I think that's a very aggressive view of timing on his end.

3    We haven't even answered the complaint and the action which we

4    have this quote/unquote Rule 26 conference during which we

5    really didn't have much to talk about because we haven't even

6    answered the complaint.  I view that as maybe that perhaps

7    fell through on the court's side, not Your Honor, on whether

8    that should occur then.  So we had it out of caution.  But

9    this notion that we're months away from significant things

10   happening in these cases, I don't know what the basis for that

11   is.

12          THE COURT:  So some of the questions that have been

13   raised over here about the size of the fund, what assets are

14   in the estate, what assets are not in the estate, you said

15   that claims would not be capped.  But is the fund a certain

16   amount?

17          MR. MOSKOWITZ:  I don't have the answer to that

18   question.  Certainly that's an issue that should be discussed

19   at this time along with any other issue that plaintiffs want

20   to raise.  They should call Ms. Feldman, call Mr. Feinberg,

21   set up times to meet with them.  Again, I don't speak for

22   them.  But my understanding is they want to hear from all

23   interested parties.  They finally made that clear.

24          THE COURT:  Well, you're counsel in this case.  So

25   if cases settle --

23

1          MR. MOSKOWITZ:  Sure.

2          THE COURT:  -- in this Court, I would think you

3    would need to be involved as well in this process and not

4    just, you know, refer them to somebody else who's not

5    representing a party.  So I think you need to be more

6    personally involved, you or your firm or one of the firms

7    involved representing defendants, and try to ensure that there

8    is good dialogue, that there is good communication, and that

9    what plaintiffs' counsel has to say is not falling on deaf

10   ears, is not, you know, not being responded to.

11         MR. MOSKOWITZ:  Agree 100 percent and that's fully

12   our intent.  This was just filed a week ago.  And also, we

13   will be fully involved; however, not at the expense of

14   inserting ourselves into anything that the administrators view

15   as solely within their domain as independent claims

16   administrators.  So there's a little question there that yes,

17   we will communicate with them.  We encourage plaintiffs'

18   counsel to do the same.  We will stay fully involved to find

19   out what's going on.

20         THE COURT:  Will you have authority to settle any

21   individual case outside of this framework that you're

22   discussing?

23         MR. MOSKOWITZ:  Settlement discussions are always

24   welcome.  I don't have any specific authority in that regard

25   but no door is closed.

24

1              THE COURT:  All right.  What I'd like to do with

2    respect to settlement is have an update after there's been a

3    period of time when everyone has been conferring and

4    plaintiffs have been at the table through their counsel to

5    give me just a status report on how that's going and whether

6    it's looking promising or whether it's not from anyone's point

7    of view.  And that doesn't mean other things can't be handled

8    on a parallel track.  But I think that settlement is an

9    important track.  Plaintiffs are clearly interested.

10   Defendants are clearly interested.  And when everyone's

11   interested in settlement, seems to me that's the first thing

12   you want to all try to do.  But it's got to really be a

13   process where everyone really has seats at the table, it's not

14   just lip service to seats at the table, okay, to discuss any

15   and everything that seems important to that process including,

16   you know, how much is in a fund and including, you know, what

17   is in this estate and not, so that plaintiffs understand, it's

18   almost like early disclosure of an insurance policy in a case.

19   Well, what is there?  Right.  That's one thing that's under

20   Rule 26(a), a part of it, is to understand on plaintiff's side

21   what resources are there that are available towards

22   settlement.  That's one reason why that information becomes

23   important.

24              All right.  I'm going to move on from that and we'll

25   talk about timing at the end with respect to anything and

25

1   everything.  I know that in some cases defendants haven't even

2   been served much less answered and there may also be motions.

3   There may also be motions to dismiss.  I know there is at

4   least a potential statute of limitations issue that's out

5   there that defendants may wish to litigate, may not wish to

6   litigate.  Don't know.  Can you tell me on defendant's side

7   whether there are any motions planned?

8           MR. MOSKOWITZ:  Yes, there are motions planned, Your

9   Honor, and the statute of limitations are certainly relevant

10  to some of those motions.  I don't have all the bases for the

11  motions that we'll begin filing I believe starting next week.

12  And actually, I have a quick question if I can get back to

13  that on the timing.  Among other things, every plaintiff has

14  asked for punitive damages but those are expressly barred by

15  New York statute and other jurisdictions that they may argue

16  are relevant.  So we will be moving to dismiss claims for

17  punitive damages as well.  And again, we are developing other

18  bases for motions.

19          THE COURT:  Right.  As I said, as far as I know I

20  don't have any of these cases for dispositive motions to issue

21  reports and recommendations on dispositive motions.  So any

22  such motions remain before the district judge.  I can probably

23  with respect to most -- different judges are different, but

24  with respect to most of them, I can probably set a schedule

25  for the motions, but I'm not going to be the one who decides

26

1   the motions.  With respect to scheduling, on any motion of any
2   kind I always appreciate if lawyers talk to one another and
3   propose briefing schedules because, you know, I'm assuming
4   you'll be reasonable.  If it looks unreasonable to me like
5   we'll brief this motion in three months and do an opposition
6   three months later I will say no, you're not going to do that.
7   But most times lawyers can propose sensible schedules and,
8   like I said, always appreciate it if you talk to one another.
9   With respect to discovery, if there are dispositive motions,
10  that does not necessarily stay discovery.  The default in this
11  Court is it does not stay discovery.  There has to be an order
12  from the Court saying discovery is stayed.  But it may make
13  sense if there is a dispositive motion to stay discovery in
14  whole or in part, very often what I do in cases is I try to
15  get a feel for what should be done soon, it's not overly
16  burdensome, and where there some reason to do it sooner, what
17  should be put off until later because maybe you save the money
18  on it and maybe it's less important at that initial juncture.
19  And I try to do something that is sensible that allows the
20  case to move in a sensible way with an understanding that
21  motions are pending.  So when you confer about discovery when
22  we get there, think about that as well.  Don't simply argue to
23  me if there's a motion that it should be all or nothing.  You
24  can argue that, but also talk about whether there's some
25  compromise approach that makes sense for the particular needs

27

1  of the particular case.

2       With respect to settlement, keep one eye on that

3  even if you're engaged in discovery because I'm a firm

4  believer that there are windows where cases are capable of

5  being settled.  And sometimes it needs a certain something in

6  discovery to aid that.  Now, maybe as part of a claims

7  administration process documentation would be submitted or

8  would be discussed in that separate process anyway, but it may

9  be that you need discovery in the litigation to have in hand

10 certain discovery before you can figure out the right

11 settlement for a particular case.  So that might be a higher

12 priority item because if you want to go toward an early

13 settlement there may be certain things in discovery that are

14 particularly important to learn or understand before you are

15 in a position to accept or reject a proposed settlement or to

16 make a proposed settlement.

17       It seems a little bit premature, even though I

18 wanted to get a jump on these cases, to be setting discovery

19 schedules especially in cases where there's not been an

20 answer, certainly in cases where there's not even been

21 service.  And especially in cases where there may be a motion

22 in lieu of an answer.  But I do want everyone to confer about

23 discovery and I want everyone to submit proposals.  The more

24 joint they are, the better.  The more you have really

25 conferred the better.  When I talk about good faith

1   conference, I don't mean I sent an email and I didn't get a

2   response yet.  When I talk about good faith conference I mean

3   you picked up the phone, you spoke to each other, you talked

4   through issues, you tried to work out issues and only if you

5   can't then you bring them to my attention.  That goes for

6   discovery along the way.  I will not even entertain a

7   discovery dispute if it doesn't appear to me that you fully

8   conferred in good faith.

9           Pet peeve, we're not there yet, pet peeve I get a

10  discovery motion, I get an opposition that says we'll do

11  certain things, I get a reply that says never mind, I have

12  wasted my time reading it.  All it tells me is you've had a

13  failure of good faith conference.  You should have been able

14  to figure that out through talking to each other rather than

15  spending money on briefing.

16          I'll also note, by the way, that Ms. Kaplan, you

17  sent me, I think you're the one who sent me three binders of

18  courtesy copies of things, yes?  Those are your binders?

19          MS. KAPLAN:  I believe so.  So Your Honor, two

20  issues.  One, we have an issue about spoliation that we hope

21  to be decided today.  And two, Judge Failla called us

22  yesterday and told us that she wanted you to decide the

23  pseudonymous --

24          THE COURT:  That's fine.

25          MS. KAPLAN:  -- motion in our case.  So that's what

29

1  we sent you, Your Honor.

2          THE COURT:  That's fine.  You don't have to spend

3  your time and money putting together beautiful binders for me.

4  I mean it's very nice, but I have three binders which I've

5  combined into one.  I mean I have three binders combined in

6  one.  One had, I don't know, maybe four, three documents and I

7  said oops, there's one missing.  So instead of sending the one

8  that was missing you sent an entire new binder that had four

9  instead of three.  And then there was another one with

10 separate tabs and separate letters and separate cover pages

11 and I just took it all apart and put it all in one and I

12 really didn't even need it at all.  But thank you.  And then

13 in the binders I did get, with respect to the Jane Doe issue,

14 the one thing that I actually wanted to see which was the two

15 competing proposed orders, one of those was missing from the

16 binder.  Defendant's was not in there.  So come on, if you're

17 going to give me binders and you're going to give me courtesy

18 copies, at least give me the things that I'm most going to

19 want to see.  But save your time, save your energy, save your

20 money.  If it's something lengthy that has a lot of exhibits

21 I'm not going to want to print out, yes, courtesy copies are

22 really appreciated.  But you can just stick a courtesy copy in

23 an envelope and say here's a courtesy copy.  I don't need

24 things so pretty.  It's nice but it's not actually necessary

25 especially if you ask for fees later and complaining that you

30

1    spent money on this sort of thing.

2             MS. KAPLAN:  I apologize, Your Honor.

3             THE COURT:  That's okay.

4             MS. KAPLAN:  I think from our perspective there was

5    some lack of understanding as to --

6             THE COURT:  Don't apologize for trying to be

7    organized and have a nice presentation.  I appreciate it.  I'm

8    not trying to be critical.  I'm just saying it's really not

9    necessary.  On the John Doe -- John Doe?  Jane Doe, Jane Doe

10   issues, I have no problem signing an order.  The only question

11   is what form of order.  And because there are several cases

12   with Jane Does or somebody Doe, and because many of those, if

13   not all, most, are going be referred to me for general

14   pretrial supervision which will include decisions like that,

15   it would be nice to have some uniformity.  So I know that

16   Judge Castel has already issued a couple of orders.

17            MR. MOSKOWITZ:  Your Honor, I have an update.  I

18   apologize to interrupt.  I do have an update about this issue.

19            THE COURT:  You've requested that Judge Castel do

20   something different?

21            MR. MOSKOWITZ:  No.  Mr. Edwards and I, recognizing

22   that uniformity makes sense and recognizing that it would be a

23   shame to burden the Court with motion, continued motion

24   practice about this because as we've clarified in our

25   responses that Your Honor may or may not have seen --

1          THE COURT:  You're going along with the form of

2    order that Judge Castel issued?

3          MR. MOSKOWITZ:  Right.  We don't object to anonymity

4    from the general public.  We just want to make sure it doesn't

5    come at the expense of our ability to defend the actions.  And

6    Mr. Edwards and I agreed yesterday in principle to a form

7    order that I'm going to promptly send him.  I'll try to do it

8    today.  This was just late afternoon yesterday.  And I

9    respectfully submit that it makes sense to have that order

10   entered in each action.  It strikes the right balance between

11   protecting the plaintiffs' anonymity from the general public

12   and also making sure we are free to defend the case by using

13   that information without otherwise exposing it to people that

14   it shouldn't go to.

15         THE COURT:  Well, I must say I don't envy you both

16   because you're before a lot of different district judges who

17   are individuals and will handle cases differently.  Also, you

18   have a lot of different plaintiffs' lawyers who are different

19   and may want to handle cases differently.  On plaintiff's

20   side, you know, if you had been, whoever it was -- I'm not

21   sure who it was who wanted to have the cases all put before

22   one judge, whether it was defendant's side that wanted to do

23   that or plaintiffs' side.

24         MS. KAPLAN:  I'm the guilty party, Your Honor.

25         THE COURT:  Okay.  If you had been successful in

32

1  having the cases before one judge, you would have had to have

2  coordinated among plaintiffs' counsel either to figure out

3  who'd be lead counsel or at least who would take the lead on

4  something like proposing the terms of an order like this.  So

5  I'm hoping that even though you're spread out among different

6  judges, plaintiffs' counsel can coordinate and can have one

7  voice for negotiating something like that and have one order,

8  one form of order that can govern in all of these cases for

9  anyone who wants to proceed under a pseudonym.  And it may be

10  because Judge Castel has already entered orders, that's fine,

11  but I'm sure he would be fine with my modifying an order to

12  make it consistent with orders in other cases if that makes

13  more sense.  Right?  So I understand defendant's view, I

14  understand the views that have been articulated by Ms. Kaplan

15  in her correspondence.  There ought to be a happy medium that

16  protects anonymity and it still doesn't prejudice defendants.

17  You may have gone a little overboard in the protections you

18  were seeking.  They can be addressed as we go to some extent.

19  See if you can work it out.  Possible to work it out?  I'm

20  hoping.

21          MR. MOSKOWITZ:  Will do, Your Honor.

22          MS. KAPLAN:  We will try, Your Honor.

23          THE COURT:  Okay.  You can do it.  I'm quite

24  confident you can manage to come up with a proposed order for

25  anonymity that will make sense and not prejudice anyone's

33

1  rights.

2        With respect to spoliation, it's raised in one case,

3  the Judge Failla case, which is 8673.  I have a simple

4  response to this.  Counsel should know what their obligations

5  are and those obligations are pretty clear under the law and

6  counsel should take them seriously.  If you do not preserve

7  evidence that should be preserved that you had a reason to

8  believe was relevant to claims or defenses in the case and

9  that you didn't take steps to preserve, there can be negative

10  consequences down the road.  In order to be confident about

11  what evidence it is that you better take steps to preserve, it

12  can't hurt to be asking plaintiff's counsel to summarize for

13  you those things that you think are important if they're

14  potentially going to make something of this.  That's just for

15  your information.  But ultimately it is defendant's obligation

16  to preserve.  I don't think I should have to tell them that.

17  And I don't plan at this point to issue an order with respect

18  to preservation unless and until I see something where it

19  seems fairly clear that there has been, you know, a lack of

20  preservation or there's been that conduct.  The one thing that

21  was brought out by Ms. Kaplan with respect to the need for

22  spoliation was a story that was reported somewhere in the

23  press where defendants have said no, you misunderstood what

24  happened.  At this point I have no reason to doubt what

25  defendants' counsel are saying about what happened, so

34

1  therefore, I have no reason to believe there is bad faith or

2  bad conduct.  And so therefore, I'm going to deny the request

3  to order preservation.  I'm only going to remind everyone of

4  their obligations as counsel to preserve evidence which should

5  go without saying.

6        MS. KAPLAN:  The only thing I would add to that,

7  Your Honor, we're fine with that, is that Mr. Epstein, as Your

8  Honor surely knows, has multiple residences in multiple

9  countries across the world.  And we just want to make sure

10 that those same efforts are ongoing with respect to every --

11 the Virgin Islands, Paris, New Mexico, New York, Florida, and

12 we haven't gotten that assurance.

13       THE COURT:  So counsel, you heard it here.  Make

14 sure your efforts are broad enough.  And this motion is an

15 example to me of the good faith conference point.  You know,

16 it seemed to me that further conference about what had

17 happened with respect to the incident, it seems you did have

18 some back and forth about this.  But I mean a preservation

19 order from the Court is fairly significant.  There has to be

20 something that really spurs it.  And I think on plaintiffs'

21 side hearing that the story in the press was -- that some bag

22 had been removed from somewhere which was really not

23 documents, I gather was some clothing --

24       MR. MOSKOWITZ:  It was clothing for the decedent to

25 be laid to rest in, Your Honor.

1          THE COURT:  Yes.  I mean if there's a reason to

2    doubt that, there's a reason to doubt that.  You'll tell the

3    Court.  If there isn't, then we don't have something

4    extraordinary.  All right?  But we do have a decedent who had

5    a lot of property, had a lot of locations where he could be

6    found at various points in time and the preservation

7    obligation is going to be fairly broad, still tailored to

8    what's relevant to this case but still fairly broad.  And some

9    of these allegations do go back in time which makes the time

10   frame for preservation that much more challenging.

11          All right.  Any other particular issues that anyone

12   wants to raise?  Pseudonymous, spoliation, anything else?

13   Okay.

14          So what I'd like you to do is confer among the

15   plaintiffs' counsel -- by the way, do you know, do you

16   anticipate more cases being filed and if so, how many more?

17   Can you give me a clue?  Do you know if there are more

18   plaintiffs' counsel out there who are likely to be

19   representing parties?

20          MR. FUDALI:  Arick Fudali, Your Honor, the Bloom

21   Firm.  I can tell the Court that we do anticipate filing more

22   lawsuits in this case.  I can't say if there's other plaintiff

23   attorneys involved.  But from our perspective, I believe at

24   least at this point there is a plan to file more lawsuits.

25          THE COURT:  Can you give me an approximate number?

36

1  I won't hold you to it.

2          MR. FUDALI:  I can say less than five probably.

3          THE COURT:  Okay.

4          MR. FUDALI:  But please don't hold me to that.

5          THE COURT:  I won't.  I just wanted to get a feel.

6          MR. FUDALI:  The other issue is, Your Honor, and

7  perhaps you were about to address this, but I think to echo

8  what some of my colleagues said earlier is about clarity.  I

9  think the problem is that a lot of the plaintiffs are having,

10 plaintiffs' attorneys, we're all in the dark and we're all

11 waiting and that's not something plaintiffs or plaintiffs'

12 attorneys like to do.  So I don't know if Your Honor is

13 willing to --

14         THE COURT:  In the dark and waiting for what?

15         MR. FUDALI:  I'm sorry, details of the settlement

16 program.

17         THE COURT:  Okay.

18         MR. FUDALI:  And I wonder if Your Honor is willing

19 to set some sort of deadline --

20         THE COURT:  Yes.  I'm going to do that.

21         MR. FUDALI:  -- that defendants could give us some

22 details, that we have something to bring back to our clients.

23         THE COURT:  Well, I'm going to set a deadline for

24 reporting back to me on the status of the settlement process

25 and by that deadline there will have had to have been

1  discussions because I do not want a status report that says we

2  know nothing, we haven't been talking, we are in the dark.

3             MR. FUDALI:  Okay.  Yes.

4             THE COURT:  Because that would be pointless for a

5  status report.

6             MR. FUDALI:  I think just, yeah, we all just want

7  more detail so our clients can make an informed decision

8  immediately or at least in the near future so we're not just

9  waiting, you know, with deciding.

10            THE COURT:  Okay.

11            MR. FUDALI:  Thank you, Your Honor.

12            MS. WANG:  Good morning.  Marion Wang.  I just

13  wanted to inform Your Honor that we filed another case this

14  morning, so we have a total of three cases.

15            THE COURT:  I think we saw that one.  We've been

16  checking.

17            THE CLERK:  [Inaudible].

18            THE COURT:  We didn't see that one?  We saw another

19  one?

20            THE CLERK:  [Inaudible].

21            THE COURT:  Oh, we saw one from yesterday.

22            MS. WANG:  We filed one yesterday and we filed one

23  this morning.

24            THE COURT:  Okay.

25            MS. WANG:  So we have three total.  Two are on your

38

1  appearance list, and so there's a third one.

2          THE COURT:  Do you have the docket number on that

3  one, the case number on that one?

4          MS. WANG:  Yes, we do.  My colleague does.

5          THE COURT:  It's 19-CV something.

6          MS. WANG:  Yes.  It is 10788.

7          THE COURT:  Okay.  Can anyone else give me any ideas

8  to roughly how many more may be coming down the pike?

9          MR. EDWARDS:  Your Honor, Brad Edwards.  Potentially

10 dozens more cases could be filed.  I'm just not sure whether

11 they're going to be filed here or potentially in the Virgin

12 Islands or Florida.  So it's tough to --

13         THE COURT:  Through your firm?

14         MR. EDWARDS:  Through our firm.

15         THE COURT:  Okay.  I would just urge that if you're

16 anticipating filing more cases, you try to get on with it and

17 not have this continuing sort of trickle of cases because

18 especially if we start setting schedules for things, I'm

19 trying to have some consistency on how cases are handled.  If

20 one comes in a month down the road, another one comes in two

21 months down the road, another one comes in three months down

22 the road, you're not going to be on the same schedule.

23         MR. EDWARDS:  Your Honor, I'll tell you that Mr.

24 Moskowitz and I have been conferring pretty thoroughly on

25 issues including the anonymity issue.  And one thing that we

1   have discussed, we filed four cases immediately and since that

2   time our back and forths have led me to believe that by this

3   point we would have something more substantive with respect to

4   this proposal of settlement plan.  And so that's what we've

5   been waiting for.  To some extent at Mr. Moskowitz's urging,

6   and I don't really hold him --

7           THE COURT:  You mean before filing more cases?

8           MR. EDWARDS:  Right, before filing.  So that's

9   what -- we don't want to cloud the Court with a bunch of cases

10  that ultimately turn out to be unnecessary because they

11  decided to put the entire estate into this plan and it's going

12  to be a good thing.  So we're kind of in this limbo not

13  knowing enough information which piggybacks what counsel said

14  a minute ago.  I think once we get clarity, we'll be able to

15  know are there going to be dozens of other cases that need to

16  be filed or are we going to get somewhere with this

17  resolution.

18          MS. KAPLAN:  Your Honor, I would only add to that we

19  will seek to file anything promptly but as Your Honor may

20  imagine given the circumstances of this case there are women,

21  now grown women, who were victimized by Mr. Epstein who for

22  years and years have kept it hidden living in fear,

23  traumatized by it.  And my law firm, and I'm sure this is true

24  for the other firms, literally get a half dozen calls a day

25  from new women who are reading about this and who say oh my

40

1  God, you know, maybe --

2           THE COURT:  I see.

3           MS. KAPLAN:  And so we can't control that.  I can

4  promise you that as soon as we learn of people who we think

5  have claims we will do everything we can to file as

6  expeditiously as possible.

7           THE COURT:  You know, there's some tension obviously

8  between any attorney in an existing case that says we want to

9  move this case and we want to move this case quickly toward

10 trial.  And you know, some desire to have cases handled in

11 some kind of way that's consistent and not know how many more

12 cases are coming or when they're coming in.  They don't have

13 to all be handled the same way.  They don't all have to be on

14 the same schedule.  It can be sort of a basic concept and then

15 as new cases come in the same sort of concept applies.  But it

16 may be efficient that if someone is deposed, for example, like

17 an executor or someone else on the defendant's side that the

18 person is not deposed repeatedly.  So you may be able to come

19 up with an agreement that a deposition in one case can be used

20 in another case.  But what if it's by one counsel and you

21 didn't have your seat at the table because, you know, you're a

22 new attorney coming in and you didn't have a chance to be

23 there?  So when you're thinking about discovery, think about

24 things like that.  It may make sense to start thinking about

25 proceeding with certain types of document discovery, holding

41

 1  off on some depositions certainly on defendants' side because

 2  those may be the same or very similar in a lot of respects.

 3  Obviously, there are going to be individual stories, but some

 4  of the kinds of questions that I imagine plaintiffs are going

 5  to want to be asking are going to be the same in all the

 6  cases.  So use some thought.

 7          I'm sending you back with things to think about and

 8  things to report back to me on.  I'm not setting any discovery

 9  schedules right now.  That doesn't mean I want the cases to

10  just linger and have nothing happen.  But I think it's a

11  little bit premature.  I think that it would be -- I just want

12  to pull up a calendar here because I forgot to bring my

13  calendar.  We have holidays coming.  We have obviously

14  Thanksgiving around the corner and then we're going to hit

15  December, January time frame.  So my computer doesn't want to

16  bring me a calendar year.  I mean ordinarily I'd say 30 days

17  and get back to me on what's going on with settlement but

18  that's going to run into holiday time.  So I mean if you can

19  get back to me with a report before the Christmas holidays

20  hit, that would be great but that may be tight to really have

21  everybody involved at the table and have some discussion going

22  on.  And my erstwhile deputy has brought me my calendar.

23          By the way, this person sitting at the table is

24  Hannah Martin.  She's one of my law clerks.  If you want to

25  call my chambers about something, she's a good contact person.

42

1  I'm sure she's thrilled to hear me say that.  If you happen to

2  be a member of the press, are any members of the press here?

3  Look at all these members of the press.  Welcome to my

4  courtroom.  If you have inquiries, please do not call Hannah.

5  Please call the district executive's office because if you

6  call us, other than telling you yes it's true, we have a

7  conference today at 10 o'clock, or something like that, we're

8  going to steer you to the district executive's office for

9  press inquiries.  So please just do that in the first

10 instance.  And they'll contact us if they need information

11 from us to pass along to you.  But for litigants -- all right,

12 so let me look at this calendar.

13          It is now November 21.  Well, what do you think on

14 both sides would be rational for reporting back with respect

15 to status of getting some input on plaintiff's side, getting

16 information from defendants, all that?

17          MR. MOSKOWITZ:  So on defendants' side, two things I

18 think are relevant to that, Your Honor, recognizing that we

19 can't keep, you know, letting things linger because of new

20 cases coming in as you were alluding to.  Currently with

21 respect to cases for which response deadlines to complaints

22 are already set, I believe the last of those response

23 deadlines runs December 20 or something.  So I think it would

24 make sense for getting back to the Court to be sometime after

25 that, not too long.  And obviously, there's the holidays so

43

1  maybe a couple of weeks after that would make sense.  Also, in

2  terms of timing generally, this will come as no surprise I

3  think to Your Honor, we will, we have and we will continue on

4  my end to work as diligently as possible to promptly provide

5  information that we agree should be provided.  Things do take

6  a little longer given that it's not just an estate but perhaps

7  the most complex estate that I'm aware of in existence right

8  now.  So to get answers to questions that may in some cases be

9  simple take a little longer in my situation.

10        THE COURT:  I don't need a status report that says

11  we've worked it all out.

12        MR. MOSKOWITZ:  Right.

13        THE COURT:  I need a status report that says here's

14  the progress that has been made on both sides with attorneys

15  on both sides confident that there is in fact progress, that

16  there is in fact a flow of information, that they're in fact

17  sitting down and talking about things and that they're

18  learning and that they're engaged and that they have some

19  hope.  Okay?  That's what I want to hear.  That's your

20  mission.  All right?  And on defendants' side, it is very much

21  in your interest to help facilitate this and try to make sure

22  this happens efficiently because to the extent anyone is

23  holding off on filing new cases to see if in fact there's a

24  workable plan for settlement that will avoid the need for

25  litigation, the longer it goes where they have doubts that

44

1   that is in fact a workable plan, the more likely they are,

2   especially after what I said about trying to coordinate cases,

3   to just start filing these cases.  I certainly don't mind -- I

4   can't speak to statute of limitation issues and whether this

5   period of time would matter or not on those issues, but I

6   don't mind if you hold off on filing cases if you think that's

7   fast because you're optimistic about a settlement fund.  Use

8   your judgment about when you file cases.  I'm not going to

9   direct you when to file them.  But you've got a lot of

10  different balls in the air.  You've got when cases are going

11  to be filed, how many there are, if discovery should move or

12  should not move, whether they should be coordinated in some

13  way or not, whether certain discovery should go first and

14  other discovery later, whether there are going to be

15  dispositive motions, how that affects whether there should be

16  discovery.  And all of this with this backdrop of talking

17  about settlement.  So I'm thinking maybe we'll just do one

18  overall status report in all these separate cases before

19  separate judges.  That may be difficult.  Maybe I can at least

20  get for each cluster of plaintiff's' lawyers the same letter

21  filed in each of the cases that you have.  If you can all

22  coordinate, so much the better.  If you can't, you'll have to

23  put them on the docket separately.  But anyway, status reports

24  on everything, meaning discussions on settlement.  Needless to

25  say, don't put confidential details about settlement on ECF.

45

1   Settlement is the one time I'll hear from you ex parte about

2   things if we really get there.  If you really want to give me

3   details like that, send me something ex parte solely on

4   settlement.  But what I'm looking for at this point is

5   something more general that you think can be on the public

6   docket.  So if you can, please put things on the public

7   docket.  There's press interest in this case.  Let's try to

8   have as much on the public docket as we can.  Okay?  But a

9   single report that talks (A) about progress of settlement

10  talks and (B) about a plan for moving forward with the cases.

11  And if they have to be case specific, they're case specific.

12  Do what you think you have to do saving money to the extent

13  you can, breaking it out if necessary.  Use judgment.

14  Understand that I'd rather have three letters than 53 letters

15  but, you know, I'll read what I have to read.  Okay?  And how

16  about January 10?  That takes you a couple of weeks past New

17  Year's.  Everybody okay with that?

18          MR. MOSKOWITZ:  Works for defendants, Your Honor.

19          THE COURT:  All right.  Look, if anyone has an

20  immediate need that comes up between now and then, I'm not

21  going anywhere including through the holidays.  I'll be

22  around.  You can contact my chambers.  Put a letter on ECF.

23  Yes.

24          MR. GOLDFARB:  Thank you, Judge.  Thank you for

25  allowing us to appear from Miami.  Alan Goldfarb for Jane Doe

46

1   17.

2           One suggestion I might offer, Your Honor, is for the

3   next significant hearing I'd like to hear from whoever the

4   claims administrator would be and have some answers here in

5   court so they can participate in explaining this process as to

6   how they see it instead of hunting back and forth as I think

7   might happen.  So I actually was hoping you would have had a

8   pre-Christmas status on that issue alone so we can get some

9   indication, which is almost 30 days from now, Judge, on how

10  that process would work here from the horse's mouth, and we

11  all hear it at once.  We're told how this would work, we

12  understand it, and we go back and decide if we accept that or

13  not.  You know, January 10th feels a little long for me for the

14  process.  You're talking about 90 days.  And I don't mind

15  coming back up here to your wonderful city again

16  Christmastime.

17          THE COURT:  I didn't know you were coming but you're

18  welcome.

19          MR. GOLDFARB:  Thank you.

20          THE COURT:  Basically what we did is we put a notice

21  on the docket on the first group of cases that we were having

22  a conference and then we started reaching out to counsel in

23  later filed cases who seemed to already know that there was a

24  conference.  So we just figured people would show up.  But we

25  didn't reach out to anyone in Florida.

1       January 10, I'm basically thinking kicking it more

2   than 30 days because of the holidays.  That's why January 10.

3   But what I'm thinking ought to happen between now and then, I

4   give it to you for serious consideration, is you folks ought

5   to schedule a meeting without me.  You ought to schedule a

6   meeting with the claims administrators and with counsel in

7   these cases on both sides.  And you ought to sit around a

8   table and you ought to talk about all the questions and get as

9   many answers as you can get and try to gain some confidence

10  that you are all participating and your views are being taken

11  seriously and valued.  And that's what I think you ought to do

12  because in settlement discussions that's what happens.  People

13  talk outside of the court about things and try to advance the

14  ball.  And you do have a lot of people.  And if you talk one

15  on one, then you have another one on one with a different

16  lawyer and the message is heard differently or different

17  questions are asked and answered, you know, you're going to

18  have some confusion reigning.  So I would strongly recommend

19  we not use the courtroom for that meeting at this stage but

20  that you see if you can set one up and literally bring people

21  to the table as a settlement discussion.  And then when you

22  report back, you'll have something to report back on.  Yes?

23       MR. BOIES:  Your Honor, David Boies.  I agree

24  completely with the Court we need to meet among ourselves.

25  You got good counsel on both sides here.  I think that we can

1   make progress.  However, my consistent experience over, as Ms.

2   Kaplan was saying, over a considerable number of years is that

3   counsel, even with a best faith world, tend to work harder

4   when they've got a appearance before the Court in order to

5   respond to where they are.  And I think that if -- I would I

6   think echo what Mr. Goldfarb said which is that if the Court

7   were to set a conference on December 20th just to sort of

8   report on where we were in terms of the settlement process and

9   the administrators, I think that would spur us over the next

10  30 days to maybe work harder and more effectively than if we

11  didn't have that date.

12          THE COURT:  Are there any attorneys here in the

13  courtroom who do not have your personal calendars with you

14  because they were confiscated at the door?  Do you all have

15  your calendars?

16          MALE SPEAKER:  Yes, Your Honor.

17          FEMALE SPEAKER:  Sure.

18          MR. MOSKOWITZ:  And Your Honor, I mean going back to

19  exactly what you said about just being practical with the

20  holidays, I'm out of state that week, December 20th.

21          THE COURT:  All right.  I'm not scheduling any

22  conference December 20.  But what I suggest is when I step

23  down from the bench I suggest that the attorneys stick around

24  for a minute, compare notes on their availability, see if you

25  can at least tentatively come up with a couple of dates that

49

1   might work for a meeting among you.  You're going to have to

2   get in touch with the administrators to see if they're

3   available which is why more than one date would be useful.

4   See if you can get something on the calendar that's a firm

5   date to start having real meetings to be able to discuss

6   things with everybody who wants to be involved involved, and

7   everyone could hear everyone else's questions.  I just don't

8   think I should be using the courtroom for that at this time.

9           MS. KAPLAN:  Thank you, Your Honor.  We will.  I

10  think what you're hearing, if I could speak from the

11  plaintiffs' side, is we've been asking for exactly that

12  meeting now for many weeks, so --

13          THE COURT:  Okay.  So let's --

14          MS. KAPLAN:  -- that's why you're hearing the

15  consternation on our side.

16          THE COURT:  All right.  Well, we don't want

17  consternation.  We don't want anybody feeling frustrated.  We

18  want everybody feeling encouraged that there is responsiveness

19  and that this is going to move forward on a track that

20  everybody's going to be optimistic about.  That's the goal.

21  All right?  You are all good counsel and you all understand

22  the need to work together.  And settlement doesn't happen

23  unless people work together.  So let's start making that

24  happen.  Try to schedule, you know -- I mean look, you can

25  provide information, you can provide some information in

1   writing perhaps.  Whatever.  You can start doing that pretty

2   promptly.  But try to schedule a meeting where you start

3   talking about this so that by January 10 it's not just you met

4   on January 9.  You know, you had a meeting, you started

5   talking, you had some further dialog, you have some progress

6   to report.  That's the goal to have progress to report.  And I

7   fully agree that having the Court keep tabs makes things

8   happen that doesn't otherwise happen which is why even at this

9   ridiculously early stage for many of these cases you are all

10  here today because the goal is to take stock of this and to

11  try to oversee this and to try to make these cases move in an

12  appropriate way instead of just having lots of separate

13  squabbles going on, lots of separate issues floating around,

14  different sorts of letters expressing different sorts of

15  frustration.  Right?  We're going to try to have this as

16  frustration free as possible.  These are serious claims.

17  Defense counsel recognizes that.  There are a lot of them.

18  There are more to come.  Let's see if we can get them on a

19  settlement track that everybody is comfortable with.  And

20  January 10, one letter, 30 letters, whatever it is, try to

21  report back on settlement, on motion practice if there's going

22  to be motion practice, on discovery proposals if you think

23  discovery is in order and you know, with lots of thought.  And

24  to the extent you differ, I'll see how you differ.  To the

25  extent you can be of one mind as to how things should proceed,

51

1  great.  All right?

2          MS. KAPLAN:  Thank you, Your Honor.

3          MR. FUDALI:  Thank you, Your Honor.

4          THE COURT:  It's a goal.

5          MR. MOSKOWITZ:  Thank you, Your Honor.

6          THE COURT:  Go forth.  Go forth and do.

7                        * * * * * *

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

52

1          I certify that the foregoing is a court transcript from

2     an electronic sound recording of the proceedings in the above-

3     entitled matter.

4

5                                    _Mary Greco_____

6                                         Mary Greco

7     Dated:   November 25, 2019

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25